Armando Z. MARTINEZ and Hortencia O. Martinez, Appellants,

v.

CITY OF AUSTIN, Appellee,

No. 3–92–173–CV.

Court of Appeals of Texas, Austin.

April 7, 1993.

Rehearing Overruled May 12, 1993.

James C. Harrington, Austin, for appellants.

William T. Deane, Asst. City Atty., Austin, for appellee.

Before CARROLL, C.J., and JONES and KIDD, JJ.

CARROLL, Chief Justice.

Armando Z. Martinez and Hortencia O. Martinez, appellants, bring a limited appeal challenging, as unconstitutional, the ethnic and racial composition of the jury in their wrongful-death suit against the City of Austin. We will affirm the trial court's judgment.

## BACKGROUND

Appellants and other family members brought a wrongful-death action against the City for the shooting death of their son, Arthur. Based upon the jury's verdict, the trial court rendered judgment that the plaintiffs take nothing on their wrongful-death claim. The trial court did hold the City liable for $1,000 in damages for emotional distress caused Armando by actions of City employees after Arthur's death.

Arthur was shot and killed by Austin Police Department officers responding to a report of gunfire in a residential area. The parties disputed the facts and circumstances of this incident below; however, appellants make no complaint as to the merits of the wrongful-death claim in this limited appeal. Instead, appellants address only a claimed defect in the composition of the jury panel.

Appellants concede that the initial panel of approximately seventy-five persons reflected the racial and ethnic composition of the general population.[1] Appellants also concede that none of the parties challenged the array or asked for a shuffle of the panel. *See* Tex.R.Civ.P. 221, 222 & 223.

During voir dire of the jury panel, several prospective jurors who were of minority race or ethnicity expressed doubt that they could be objective because of bad personal experiences with the police. The City challenged these individuals, whom the court then excused *for cause*. Appellants successfully challenged another minority individual because he was a former Austin police officer. As a result, no Hispanics

---

1. We will use the following terminology in identifying the progression of steps in the jury-selection process: "the array"—the group drawn from the jury wheel and summoned for jury service; "the panel"—the individuals assigned before voir dire to a particular case; and "the jury"—the twelve or six individuals selected after voir dire to serve as the trier-of-fact in a particular case.

remained within the so-called "strike zone," the portion of the jury panel from which the first twelve individuals and one alternate would be chosen to serve as jurors after the parties had exercised their peremptory strikes. After both sides had exercised their peremptory strikes and the twelve jurors and one alternate had been sworn and empaneled as the jury, appellants moved to quash the original panel on the ground that appellants were denied the opportunity to select a jury from a panel composed of a fair cross-section of the community as guaranteed by the Texas Constitution. *See* Tex. Const. art. I, §§ 3, 3a, 13, 15, 19, 29 & art. V, § 10. The trial court denied the motion.

The jury returned a verdict that was unfavorable to the Martinez family, except as to the emotional-distress damages awarded to Armando. The trial court rendered judgment on the jury verdict.

Armando and Hortencia bring a limited appeal in a single point of error. Appellants complain that the trial court erred in denying the Martinez family's motion to quash the panel.

### DISCUSSION AND HOLDING

Appellants do not allege that there was a defect in the selection of the array, that the "for cause" strikes were improperly granted, or that biased jurors served on the jury. Instead, they claim that a systemic bias denied them a jury that fairly represented a cross-section of the community. Appellants argue that because minorities are more likely to have disputes with the police, they are more likely to be struck "for cause" from serving on juries in cases in which a police organization is a party, resulting in minority under-representation on juries in such cases.

▮ The rules of civil procedure provide for two objections to the makeup of the jury. First, a party may challenge the array. Tex.R.Civ.P. 221. Generally, this objection alleges a defect in the juror selection and summons procedure or a violation of the jury-wheel statute. *See* Tex.Gov't Code Ann. §§ 62.001–.021 (West 1988 & Supp.1993). If the movant is successful, the entire array is dismissed and a new array summoned. Tex.R.Civ.P. 222. The challenge must be presented in a written motion supported by affidavit to the particular judge in charge of the local jury system. Tex.R.Civ.P. 221; *State ex rel. Hightower v. Smith*, 671 S.W.2d 32, 36 (Tex. 1984); *Texas Employers' Ins. Ass'n v. Burge*, 610 S.W.2d 524, 525 (Tex.Civ.App.— Beaumont 1980, writ ref'd n.r.e.); *see also* Tex.Gov't Code Ann. §§ 62.001–.021 (West 1988 & Supp.1993).

Second, a party may demand a "shuffle" of the panel. Tex.R.Civ.P. 223. The result is that the panel is randomly rearranged with the possibility that potential jurors at the end of the list may move up and be more likely to serve on the jury. This demand must be made before voir dire and is limited to one shuffle in a case. Tex. R.Civ.P. 223.

▮ In the immediate cause, it is undisputed that appellants did not make either of these objections. Appellants objected only after the parties completed voir dire, made their peremptory strikes, and the jury had been sworn and empaneled. We believe that this objection was not timely.

We distinguish the immediate case from the situation in *Mendoza v. Ranger Insurance Co.*, 753 S.W.2d 779 (Tex.App.—Fort Worth 1988, writ denied). In *Mendoza*, the jury array was largely made up of jurors who had been previously excused from service. The array summoned for a jury trial during school vacation included an inordinate number of teachers. The local practice did not provide for juror information cards. Instead, some basic information was obtained by preliminary voir dire. The lack of randomness on the panel was therefore not apparent until the time to challenge the array had passed. Appellants complained of a defect in the method used to select the array. The court of appeals held that, under these facts, a motion for mistrial made at the end of voir dire properly preserved error.

In the immediate case, however, appellants had information of the racial and ethnic makeup of the array and the panel

before voir dire and did not object. Appellants were provided with a list of the panel members several days before voir dire and were able to observe and question the panel at voir dire. Appellants admit that the array was properly selected and that the panel contained a fair minority representation.

We find the immediate situation to be very different from that of the *Batson* line of cases holding peremptory strikes unconstitutional when made with no motive other than the purposeful exclusion of some cognizable class. *See, e.g., Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). In this case, the strikes in question were made *for cause* for the *sole* reason of admitted bias on the part of the potential jurors.

Appellants rely on federal case law holding that demonstration of a threshold percentage disparity between minorities serving on juries and minorities in the general population establishes a prima facie case of denial of the right to a jury composed of a fair cross-section of the community. *See, e.g., Duren v. Missouri,* 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979); *Casteneda v. Partida,* 430 U.S. 482, 97 S.Ct. 1272, 51 L.Ed.2d 498 (1977). However, no evidence exists in the record by which this Court could measure the alleged disparity. The only evidence presented to the trial court of the percentage of Mexican–Americans residing in Travis County and serving on the panel in this case were bare assertions in appellants' motion for new trial. Appellants have failed to bring forth in the record any census data, tax rolls, jury-service records, or other data to demonstrate the alleged disparity. By failing to show evidence of the percentages of the minority group residing in the community or serving on the panel, appellants have not established a prima facie case under *Duren. See Weaver v. State,* 823 S.W.2d 371, 373–74 (Tex.App.—Dallas 1992, pet. ref'd).

For the above reasons, we conclude that the trial court did not err in denying appellants' motion to quash the panel.

## CONCLUSION

Accordingly, we overrule appellants' point of error and affirm the trial court's judgment.