Jerry Edward MANN; Linda Mann; Lisa Mann; and Cheryl Mann, Appellants,

v.

Rolando RAMIREZ and Texas Dyno Chem, Inc., Appellees.

No. 04–93–00788–CV.

Court of Appeals of Texas,
San Antonio.

Feb. 28, 1995.

Opinion by Justice Duncan Dissenting from Denial of En Banc Review July 31, 1995.

W. Burl Brock, Karl B. Brock, Suzette S. Kinder, Watkins & Brock, P.C., San Antonio, for appellants.

Erin McNiece Strimple, Stephen L. Dittlinger, David B. Person, Brock & Person, P.C., San Antonio, for appellees.

Before CHAPA, C.J., and RICKHOFF and STONE, JJ.

## OPINION

PER CURIAM.

This is an appeal from a jury trial in the 81st Judicial District Court of Frio County. The trial court, based on the jury's answers to special issues, rendered a take-nothing judgment against appellants. Appellants appeal from this adverse judgment.

We reverse the trial court's judgment and remand the cause for a new trial.

### Background

On June 19, 1990, appellant Jerry Edward Mann was severely injured in a traffic accident involving a Texas Dyno Chem, Inc. truck driven by appellee Rolando Ramirez. Originally, Ramirez brought an action against Mann for injuries suffered in the accident. The Mann family, appellants, filed a counter-claim against Ramirez and his employer, Texas Dyno Chem, Inc., for injuries suffered by Mann, which left him a quadriplegic. Following entry of an order realigning the parties, the Manns proceeded to trial against appellees Ramirez and Texas Dyno Chem, Inc.

Ramirez was driving an oil field servicing truck for Texas Dyno Chem when it was struck by Mann's pickup truck. Mann testified that Ramirez was backing the truck onto a county road when Mann came over a hill and struck the left rear side of the truck. Mann contended that Ramirez negligently operated his truck and that Texas Dyno Chem was vicariously liable for his negligence and for certain independent acts and/or omissions that were negligent and the proximate cause of the accident. Ramirez testified that he was making a left turn from the county road into a private road. Appellees asserted that Mann's negligence in failing to keep a proper lookout, driving at an excessive rate of speed, and failing to apply brakes in a timely fashion was the proximate cause of the accident. Both sides presented expert witness testimony from accident reconstructionists in support of their respective positions. The jury found that only Mann was negligent and the court rendered a take-nothing verdict upon this finding.

After the verdict was rendered and before entry of the judgment, Mann filed a Motion for Mistrial, alleging that the District Clerk, Brenda Fudge, had improperly summoned and excused members of the jury panel in violation of state regulations and the county's jury selection plan. This misconduct, according to Mann, deprived him of a jury composed of a representative cross-section of the community and resulted in a trial that was materially unfair. Mann further alleged that Fudge's misconduct stemmed from her personal "interest" in the case, based upon her admitted intimate relationship with David Massengale, the Area Manager of Texas Dyno Chem, who served as the company's corporate representative at trial. Prior to and at the time of the trial, Fudge and Massengale were living together and expecting a baby. Their relationship was common knowledge within the community.

Because the trial was held during the summer in a small community in which both the parties and news of the accident would be well-known to many people, the District Clerk summoned 250 jurors rather than the

usual 175. Pursuant to required procedures, the Clerk requested that the tax collector's office prepare the list, which was randomly generated by computer. The list was drawn on June 29, 1993, with the case being set for the week of July 12, 1993. The Clerk's office then sent the list to the Sheriff's office for service. Undeliverable summonses were returned to the Clerk's office, where "no service" was noted on the Clerk's master juror list. Following the mailing of the summonses, the Clerk's office began receiving affidavits of statutory exemptions, as well as calls from those seeking exemptions or excuses. Although many of the excuses noted on the Clerk's working copy of the list are for statutory exemptions, such as "children" and "overage," others reflect either no recorded excuse or nonstatutory excuses such as "vacation," "out of state," or "hospital," which were admittedly not cleared by the presiding judges, as required by the jury selection plan of Frio County. It is conceded that the Clerk improperly excused jurors for nonstatutory excuses.

According to District Clerk Brenda Fudge's testimony at the hearing on the motion for mistrial, the returned summonses and exemption affidavits were usually thrown away "once the jury is selected and the case is disposed of." She maintained that most of the excused jurors had written excuses, and admitted that some were taken over the phone. However, she could not produce a single affidavit substantiating the exemptions. Dawn McCormick, the Deputy District Clerk, testified that she kept the affidavits until after jury selection, and "usually after the trial and then I dispose of them." At another point, McCormick testified that she usually disposed of them after jury selection, "usually the next day or so. I have held them sometime throughout the jury, but I never hold them any longer after a jury's been picked."

Mann alleges the following county plan requisites and state statutes were violated: (1) The Frio County jury selection plan mandates that only the presiding judge may pass on juror qualifications and excuse jurors. The District Clerk's office excused some jurors for nonstatutory reasons. Secondly, the juror list was not placed on file with the county clerk, as required by the plan. (2) Section 62.101 and following sections of the Texas Government Code restrict the excusing of jurors for reasons other than those authorized by statute, require judicial excusing of jurors, and require filed affidavits supporting exemptions. TEX.GOV'T CODE ANN. §§ 62.101, et seq. (Vernon 1988). The District Clerk admitted that exemptions and excuses were granted by phone or in person by her staff, some for improper reasons, and that affidavits were not filed on all exemptions. (3) Section 51.303 of the Texas Government Code mandates that the district clerk "has custody of and shall carefully maintain, arrange, and preserve the records relating to or lawfully deposited in the clerk's office." TEX.GOV'T CODE ANN. § 51.303 (Vernon 1988). The District Clerk's office destroyed the juror affidavits and returned summonses after jury selection instead of maintaining them as records. (4) Section 202.002 of the Texas Local Government Code states "a local government record the subject matter of which is known by the custodian to be in litigation may not be destroyed until the litigation is settled." *See* TEX.LOC.GOV'T CODE §§ 201.001, et seq. (Vernon Supp.1994). Mann contends that this section forbids the destruction of the affidavits and summonses.

Mann argues that all of the above irregularities are exacerbated by the undisputed fact that the District Clerk was involved in an intimate personal relationship with the Area Manager of Texas Dyno Chem, a defendant, thereby raising an inference of bias and impropriety. During the hearing on the Motion for Mistrial, the District Clerk admitted to the "very deep relationship" and acknowledged that she thereby had a "vested interest" in the case.

After the hearing on the Motion for Mistrial, the trial judge denied the motion and entered judgment. Mann filed a Motion for New Trial, alleging official misconduct based upon Fudge's actions, juror misconduct, and trial court error. Following a hearing, the court overruled the Motion for New Trial. Appellants bring this appeal on four points of error.

In his first point of error, Mann alleges that the trial court abused its discretion in refusing to grant a mistrial based on the District Clerk's failure to comply with statutes regulating the selection of petit jurors, which amounted to "fundamental error" and resulted in a "materially unfair trial." In his second point of error, Mann contends that the trial court erred in refusing to grant him a new trial because Mann provided "conclusive evidence" of the Clerk's misconduct that infringed on his right to a trial by jury.

Appellees reply that any failure to comply with the regulations governing jury panels was not fundamental error, that such actions did not result in a materially unfair trial, that there was no objection prior to jury selection to preserve the error, and that Mann has not shown any harm by the noncompliance or that an improper verdict resulted.

### Fundamental Error

■ Mann asserts that because of the District Clerk's actions, he was denied the right to a fair and impartial jury representative of the community, which is guaranteed in the United States and Texas constitutions. He contends that a violation of this right is fundamental error. "Fundamental error survives today only in rare instances in which the record shows on its face that the court lacked jurisdiction or that the public interest is directly and adversely affected as that interest is declared in the statutes or Constitution of Texas." *Central Educ. Agency v. Burke*, 711 S.W.2d 7, 8 (Tex.1986); *see Pirtle v. Gregory*, 629 S.W.2d 919, 920 (Tex.1982). Moreover, fundamental error is nonwaivable and may be raised for the first time on appeal. *Johnson v. Ozim*, 804 S.W.2d 179, 182 (Tex.App.—Houston [14th Dist.] 1991, writ denied). Mann argues that "when positive statutes regulating jury selection are violated, a party has been denied his constitutional right of a fair trial." The statutory violations of which Mann complains are errors in the procedures of summoning, assembling, excusing, and documenting the jury array. It is well settled in Texas law, however, that such procedural issues are waivable. *See, e.g., Sendejar v. Alice Physicians and Surgeons Hosp., Inc.*, 555 S.W.2d 879, 886

(Tex.Civ.App.—Tyler 1977, writ ref'd n.r.e.) (challenge to improper excuses by sheriff, district clerk, and others waived if not presented prior to time jury was selected); *Texas Elec. Serv. Co. v. Yater*, 494 S.W.2d 271, 274 (Tex.Civ.App.—El Paso 1973, writ ref'd n.r.e.) (using district court panel instead of proper county court panel was "matter of ready waiver"). Because procedural irregularities in jury selection can be waived, we find that the actions of the District Clerk, while in violation of the statutory requisites, do not rise to the level of fundamental error.

■ Mann asserts that the multiple jury selection violations of the Clerk must be viewed in the context of her admitted relationship with Massengale and her alleged bias, and that this convergence of circumstances gives rise to fundamental error. Texas Rule of Civil Procedure 221 ("Challenge to the Array") specifically addresses this issue. The rule allows for a challenge "upon the ground that the officer summoning the jury has acted corruptly, *and has wilfully summoned jurors known to be prejudiced against the party challenging or biased in favor of the adverse party.*" TEX.R.CIV.PROC. 221 (emphasis added). Again, we find that Texas cases addressing a challenge to the array hold that such challenge may be waived if it does not comply with the requirements of Rule 221. *E.g., Martinez v. City of Austin*, 852 S.W.2d 71, 73 (Tex.App.—Austin 1993, writ denied); *Garcia v. Texas Employers' Ins. Ass'n*, 622 S.W.2d 626, 630 (Tex. App.—Amarillo 1981, writ ref'd n.r.e.); *King v. Moberley*, 301 S.W.2d 202, 205 (Tex.Civ. App.—Eastland 1957, no writ). While the District Clerk's admitted intimate relationship with one of the litigants does not singly elevate the irregularities to fundamental error, it certainly suggests that the irregularities were prejudicially oriented. Nevertheless, we conclude that the actions complained of do not rise to fundamental error.

### Waiver

Because we find that the misconduct complained of does not amount to fundamental error, we next address appellees' contention that Mann waived any error by failing to object to the jury selection process prior to

the time the jury was selected. Mann's attorney asserts, and the record reveals, that prior to voir dire he questioned the deputy clerk in the presence of the judge[1] concerning the small number of jurors who had appeared, and was misled by assurances that the number was affected by statutory exemptions, the judges' excusing of jurors, and no service. Testimony by appellees' attorney during the hearing on the Motion for Mistrial confirmed the inquiry. The appellees' attorney stated to the judge: "[I]f you'll remember, as this panel was called in here and we were going through excuses Mr. Brock, plaintiff's attorney, knew, number one, that 250 jurors were summoned. They got that list of jurors the same day we did.... We got down here and a little bit less than a hundred jurors that actually appeared.... Mr. Brock said why aren't there more people. He was advised people had been excused, you know, for the last nine days they've been calling in with excuses." During his examination of Deputy Clerk Dawn McCormick, Brock stated: "do you recall during the voir dire process when we were at the bench and I raised the question about the number of jurors that showed up here and basically made an objection about that ...," and McCormick acknowledged that "[t]he statutory exemptions, the judges excusing them and no service" explained the small number of jurors. The jury list given to Mr. Brock was a clean copy showing all 250 names, so he did not see the extent or types of exemptions. Appellees cite to *Sendejar v. Alice Physicians & Surgeons Hospital,* 555 S.W.2d 879, 886 (Tex.Civ.App.—Tyler 1977, writ ref'd n.r.e.) in support of their waiver argument. In that case, the appellant in a motion for new trial charged that jurors had been improperly excused by the sheriff, the district clerk, and others in violation of statute. Although the court stated, "To force a litigant *over his objection* to proceed to trial where prospective jurors have been excused contrary to the statute would no doubt constitute reversible error," the court nonetheless held that appellant had waived error

because he did not complain prior to selection of the jury. The court indicated that under the facts of that case, the attorney *"knew or should have known that 44 jurors were absent and unaccounted for and he made no complaint thereof."* *Id.* at 889 (emphasis added).

*Sendejar* and other cases holding that a party's failure to timely object waives error regarding summoning the jury are distinguishable from the case before us. The circumstances of the cases either justify the conclusion that appellants knew or should have discovered the irregularities, complained in an untimely fashion to the wrong judge, or brought their challenges too late. *See, e.g., State ex rel. Hightower v. Smith,* 671 S.W.2d 32, 36 (Tex.1984) (plaintiff complained that jury was not selected in compliance with jury wheel statute; court would not consider merits because he did not present his complaint to the proper judge); *Berner v. Southwestern Public Service Co.,* 517 S.W.2d 924, 925 (Tex.Civ.App.—Amarillo 1974, writ ref'd n.r.e.) (appellant lacked diligence in questioning juror selection method, thereby waiving error, when he filed motion for new trial more than two and a half months after trial); *Texas & N.O.R. Co. v. Jacks,* 306 S.W.2d 790, 792–93 (Tex.Civ. App.—Beaumont 1957, writ ref'd n.r.e.) (plaintiff charged that many jurors were wrongfully excused by sheriff and clerk; court held that error was waived because he complained to the trial court instead of the judge who organized panels).

 In the instant case, appellants' attorney not only brought to the court's attention the missing jurors, but was assured by a representative of the District Clerk's office that the absentees had valid judicial excuses or exemptions. A party in litigation has a right to rely on the representations of a public official regarding the proper execution of the official's duties, especially when made in the presence of the presiding judge. It was not until after the trial that appellants

[1] It must be noted that the trial judge was an assigned visiting retired senior judge, rather than the district judge who would normally have excused the jurors involved. Therefore, he was apparently as unfamiliar with what had tran-

spired in the excusing of jurors prior to his assignment as were the litigants. Like the litigants, however, the trial judge was entitled to rely on the public official's assurances of procedural regularity regarding the absent jurors.

discovered the potential irregularities and that the District Clerk's office had destroyed the documentation on the excuses, exemptions, and returned services, making it impossible to verify the propriety of the Clerk's actions. Immediately upon discovering the discrepancies, appellants moved for a mistrial.

In *Mendoza v. Ranger Insurance Co.*, 753 S.W.2d 779 (Tex.App.—Fort Worth 1988, writ denied), appellant moved for a mistrial and requested a new panel after initial voir dire by the court and before empaneling of the jury, because a disproportionate number of the jurors were teachers. The court found that appellant's objection was timely in spite of being contrary to cases holding that the objection must first be presented to the judge in charge of the jury for the week. The court said that this rule "puts an unreasonable and impractical burden on a party who is faced with a jury panel which is impermissibly selected." *Id.* at 780. The court concluded that the appellant had actively asserted her rights and adequately moved for a mistrial when the jury irregularity became apparent.

As noted *supra*, the record is clear that appellants' attorney made an inquiry regarding the missing jurors at the bench in the presence of appellees' attorney and the judge, and was assured in their presence that all regulations had been followed. We conclude that under the circumstances of this case, appellants acted as soon as they "knew or should have known" of the irregularities. Appellants cannot be faulted for relying on the assurances of the District Clerk's office regarding the jury-assembling procedures and diligently pursued the error through their Motion for Mistrial as soon as the irregularities became apparent. We therefore hold that appellants' timely actions properly place the case on its merits before us.

## Analysis

Because we find that Appellant did not waive his objection to the violations of the Clerk's office in assembling the jury array, we next address the merits of his first two points of error. It is undisputed that irregularities in the granting and documentation of exemptions and excuses occurred. Moreover, it is undisputed that a close personal relationship existed between the District Clerk and the official representative of the defendant company. We must therefore examine the totality of the circumstances to determine whether the aggregate of errors, when assessed in combination with the relationship involved, raises the error to a level that would require a reversal of the trial court's judgment and the granting of a new trial.

### a. Standard of review: "Materially unfair trial"

Appellees contend that Mann has not shown that he was harmed by the admittedly improper actions of the District Clerk, nor has he shown any type of systematic exclusion of any particular group of jurors. While it is true that the harmless error rule has been applied in some cases involving erroneous empaneling of jurors and errors committed during jury selection, *e.g.*, *Rivas v. Liberty Mut. Ins. Co.*, 480 S.W.2d 610, 611–12 (Tex.1972) (holding that harmless error rule applies when trial court fails to comply with rules prescribing methods of listing jurors), "[t]he necessity to prevent the subtle erosion of the standards of the jury system does not require a showing by appellant of injury." *Mendoza*, 753 S.W.2d at 781. The Texas Supreme Court has lessened in some instances the burden on an appellant in recognition of the difficulty in showing an improper judgment has resulted from actions that may prejudice the appellant's rights to an impartial jury. In *Tamburello v. Welch*, 392 S.W.2d 114 (Tex.1965), defendants whose interests were antagonistic were granted only three peremptory challenges each. In reversing and remanding for a new trial, the court noted: "As a practical matter ... the appellant will usually be unable to show that an improper judgment probably resulted from an error of this nature." *Id.* at 117. The court then analogized the situation to that in *Heflin v. Wilson*, 297 S.W.2d 864 (Tex.Civ.App.—Beaumont 1956, writ ref'd), in which members of a jury panel had been selected by the jury commission method

rather than the use of a jury wheel. The *Tamburello* court quoted *Heflin:*

Approval of the judgment would be tantamount to denying appellant his constitutional right of a trial by jury, because trial by jury that has *at least been selected in substantial compliance with law* is what is guaranteed him by both the federal and our state constitutions.

*Tamburello,* 392 S.W.2d at 117 (emphasis added).

We agree with the supreme court that the principle involved in cases on the unfair allocation of jury strikes is the same as that in cases dealing with a lack of substantial compliance with jury selection statutes; namely, the inability of an appellant to show harm resulting from a tainted jury selection process.

In *Patterson Dental Co. v. Dunn,* 592 S.W.2d 914 (Tex.1979), the supreme court noted, "We relaxed the requirement of the traditional 'harmless error' rule by establishing the burden on the complaining party to show that *'the trial which resulted against him was materially unfair'* and held that the denial of strikes to each defendant, without any further showing, resulted in a trial that was so materially unfair that the judgment must be reversed." *Id.* at 921 (citing *Tamburello v. Welch,* 392 S.W.2d 114 (Tex. 1965)) (emphasis added); *see Lopez v. Foremost Paving Inc.,* 709 S.W.2d 643, 644 (Tex. 1986).

In *Patterson,* the supreme court asserted that when a trial is contested and the evidence sharply conflicting, "the error results in a materially unfair trial without showing more." *Patterson,* 592 S.W.2d at 921. Although in *Patterson* a statement of facts was not available, the court assessed certain factors in determining whether the trial was "hotly contested": (1) the number of special issues submitted, (2) the ten-to-two verdict, (3) the absence of summary judgment motions or motions for an instructed verdict.

Since *Patterson Dental,* subsequent cases have identified additional factors that should be assessed when determining if a trial has been "hotly contested" and if the evidence is "sharply conflicting," such that complained-of errors result in a materially unfair trial. In *Lorusso v. Members Mut. Ins. Co.,* 603 S.W.2d 818 (Tex.1980), the court, citing *Tamburello* and *Patterson* with approval, noted:

We recognize the impossibility of prescribing a specific test for determining whether any error, be it the improper admission or exclusion of evidence, improper argument, or the giving or depriving of a party of the proper number of peremptory challenges, "was reasonably calculated to cause and probably did cause the rendition of an improper judgment." Such a determination necessarily is a judgment call entrusted to the sound discretion and good senses of the reviewing court. It is clear, however, that such a judgment call must be determined from an evaluation of the whole case.

*Id.* at 821.

In *Lorusso,* the court was faced with a partial statement of facts. The case involved an action by a motorist against her insurer for uninsured motorist benefits and against the uninsured motorist for injuries. The trial court granted both the insurer and the uninsured motorist six peremptory challenges each, compared to Lorusso's six challenges. Following a take-nothing judgment, Lorusso appealed the granting of unequal challenges. The supreme court analyzed the pleadings and the jury findings and determined that nothing indicated that the case was "sharply contested." The court noted that the record did not indicate how the parties used their strikes, whether they were all exercised, or whether there were double strikes. The court concluded that Lorusso had failed to establish a materially unfair trial.

In *Lopez v. Foremost Paving Inc.,* 709 S.W.2d 643, 644 (Tex.1986), the supreme court reversed the court of appeals and remanded for a new trial upon a finding that the trial was hotly contested and the evidence conflicting. The trial court had awarded the defendants twice the number of strikes as the plaintiff, which the court of appeals held to be harmless error. Applying the "relaxed" harmless error standard, the supreme court reversed because the error resulted in a materially unfair trial. In re-

viewing the record, the court described in detail the conflicting testimony of both plaintiff's and defendant's witnesses and experts. The court further noted that, at one point, the jury was deadlocked 7–5 in favor of defendants, and ultimately rendered a verdict on a 10–2 vote. The court listed as other significant factors the defendants' methods of cross-examining each other's witnesses, and the defendants' collaboration on strikes to eliminate double strikes. Lastly, the court noted that defendants did not present motions for summary judgment or instructed verdicts.

In *Garcia v. Central Power & Light Co.,* 704 S.W.2d 734 (Tex.1986), a strike equalization challenge, the court again found a hotly contested trial and remanded for a new trial based on the following factors: (1) no motions for summary judgment filed, (2) only two motions for an instructed verdict, (3) eighteen witnesses testified, including expert witnesses on both sides, (4) the jury was asked twenty-three special issues, many of which were multipart, (5) the multiple defendants made exculpatory remarks about each other, and (6) the verdict was ten to two.

b. **Standard of review applied to the instant case**

We now analyze the record before us in light of the test enunciated by the Texas Supreme Court in *Tamburello* and the determinative factors as revealed in its progeny. First, the record reflects that there were no motions for summary judgment. The appellees moved for a directed verdict once, at the conclusion of the appellants' case-in-chief, which the trial court denied. Next, the record reveals that the jury verdict was eleven to one. Both appellant and appellees used all six jury strikes, and there were no double strikes. Next, multiple jury issues were submitted. The jury heard the testimony of twenty-four witnesses, including appellants and appellees, expert witnesses, Department of Public Safety officers, physicians, and witnesses at the scene shortly before and after the accident. The testimony of Mr. Ramirez and Mr. Mann as to the cause of the accident was sharply conflicting, and several alternate theories regarding the movement and positioning of the vehicles immediately before the accident were advanced. Each side presented expert testimony by accident reconstructionists.

Furthermore, we must analyze the record of the trial before us through the unique prism of the relationships of the interested parties. In this case, we are faced with an admitted intimate relationship between a representative of a party to the suit and the public official whose office is charged with the responsibility of assuring a fair and impartial jury. It is undisputed that statutory violations occurred, and misleading assurances were made to the appellants' attorney.

Based on the totality of the record before us, we find that the trial in the instant case sufficiently meets the standard set by the supreme court of a hotly contested trial which resulted in a materially unfair trial as a matter of law.

c. **Harmful error analysis**

Moreover, we would reach the same conclusion under a harmful error analysis. Texas Rule of Appellate Procedure 81(b)(1) provides:

> No judgment shall be reversed on appeal and a new trial ordered in any cause on the ground that the trial court has committed an error of law in the course of the trial, unless the appellate court shall be of the opinion that the error complained of amounted to such a denial of the rights of the appellant was reasonably calculated to cause and probably did cause rendition of an improper judgment in the case. . . .

TEX.R.APP.P. 81(b)(1). It is axiomatic in our system of justice that "[e]very citizen is entitled to a fair and impartial trial before an impartial jury, fairly representative of the community." *Mendoza,* 753 S.W.2d at 781. We recognize that in the case before us the trial judge, in a sincere effort to reach an appropriate decision, made a thorough inquiry into the appellants' allegations at both the hearing on the Motion for Mistrial and at the hearing on the Motion for New Trial. Moreover, the trial judge's comments from the bench reflected his understanding, gained from observation and personal experience, of unsanctioned procedural shortcuts which

may be employed at times in the implementation of our justice system. Nevertheless, the fact that custom may be otherwise does not relieve anyone from following the requirements of the law. An individual litigant, as well as a trial attorney, has the right to bring a suit in any county in the state and be assured that he or she will receive a hearing before a fair and impartial jury, assembled in accordance with the laws of the state.[2] The conceded statutory and local violations and admitted personal bias of the official charged with assembling an impartial jury as detailed previously in this opinion raise a strong inference that the actions taken may have been intended to, and did, prejudice the rights of the appellants.

We conclude that the trial court abused its discretion in denying a mistrial and erred in failing to grant a new trial, in light of the totality of the record and the evidence adduced at the posttrial hearings. These errors amounted to such a denial of the Manns' rights as to be reasonably calculated to cause, and probably did cause, the rendition of an improper judgment.

We do not reach appellants' other points of error. The judgment of the trial court is reversed and the cause is remanded for a new trial.

RICKHOFF, Justice, dissenting.

Appellants' argument, and the majority's decision, rest on only two facts: (1) at the time of trial the district clerk of Frio County was pregnant and living with the corporate representative of one of the litigants; and (2) prior to jury selection certain personnel in the district clerk's office excused prospective jurors, accepted exemptions, and failed to file and preserve the jury list, all in violation of the civil statutes. *See, e.g.,* TEX.GOV'T CODE ANN. 51.303 (Vernon 1988). From these facts the majority infers that "the actions taken may have been intended to, and did, prejudice the rights of the appellants." This inference is unwarranted. Indeed, after thoroughly reviewing the record and the applicable law, I find nothing to suggest that appellants preserved error, demonstrated harm, or have shown a systematic exclusion of any particular group of jurors. Furthermore, I fear that the majority, in allowing a post-verdict objection and challenge to the jury selection process, is setting a dangerous precedent. For these reasons, I dissent.

The Texas Rules of Civil Procedure provide for only two objections to the makeup of the jury. First, a party may challenge the array. TEX.R.CIV.P. 221. Generally, this objection alleges a defect in the juror selection and summons procedure or a violation of the jury-wheel statute. *See* TEX.GOV'T.CODE ANN. §§ 62.001–021 (West 1988 & Supp.1995). If the movant is successful, the entire array is dismissed and a new array is summoned. TEX.R.CIV.P. 222. The challenge must be presented in a *written* motion supported by affidavit to the particular judge in charge of the local jury system. TEX.R.CIV.P. 221; *State ex rel. Hightower v. Smith,* 671 S.W.2d 32, 36 (Tex.1984); *Martinez v. City of Austin,* 852 S.W.2d 71, 73 (Tex.App.—Austin 1993, writ denied); *Texas Employers' Ins. Ass'n v. Burge,* 610 S.W.2d 524, 525 (Tex.Civ. App.—Beaumont 1980, writ ref'd n.r.e.). *See also* TEX.GOV'T.CODE ANN. §§ 62.001–.021 (West 1988 & Supp.1995). Here no written motion was filed; no affidavits submitted; and no objection was made to the judge in charge of the local jury system.

Second, a party may demand a "shuffle" of the panel. TEX.R.CIV.P. 223. The result is that the panel is randomly rearranged with the possibility that potential jurors at the end of the list may move up and be more likely to serve on the jury. *Martinez,* 852 S.W.2d at 73. This demand must be made before voir dire and is limited to one shuffle in a case. TEX.R.CIV.P. 223. Here no shuffle was requested.

It is undisputed there were no such objections to the jury selection process in this

---

2. We are accused by the dissent of "setting a dangerous precedent" in our decision today. We find no difficulty, however, in establishing a precedent that requires those sworn to follow the laws of jury selection to do so, considering that we are sworn to follow the law ourselves and to review appeals under those dictates. If local custom justifies ignoring laws that are found to be cumbersome, why is there not justification also for local custom to ignore any other law for any other reason? This would indeed be a dangerous precedent.

case. It is too late to complain of the jury panel or errors in the selection of the jury when the complaint, as in this case, is made only after the verdict. *See Pouncy v. Garner,* 626 S.W.2d 337, 340 (Tex.Civ.App.—Tyler 1981, writ ref'd n.r.e.); *Sendejar v. Alice Physicians & Surgeons Hosp., Inc.,* 555 S.W.2d 879, 886 (Tex.Civ.App.—Tyler 1977, writ ref'd n.r.e.); *Berner v. Southwestern Public Service Co.,* 517 S.W.2d 924, 925 (Tex. Civ.App.—Amarillo 1974, writ ref'd n.r.e.). *See also* MCDONALD TEXAS CIVIL PRACTICE § 21.43 (1992) ("It is the general rule that when a party or his or her attorney learns before verdict of an impropriety in the course of the trial, he or she must promptly complain or the matter will be waived."). This rule applies not only when the party is aware of the irregularity but also when he or she might have discovered it by inquiry. *Berner,* 517 S.W.2d at 925. "This rule is, of course, designed to prevent a party from taking his chance on a favorable verdict and then obtaining a second trial by reason of the irregularity...." *King v. Moberley,* 301 S.W.2d 202, 205 (Tex.Civ.App.—Eastland 1957, no writ).

The majority, however, relies largely on *Mendoza v. Ranger Ins. Co.,* 753 S.W.2d 779 (Tex.App.—Fort Worth 1988, writ denied). In *Mendoza,* a large number of jurors had been excused from service. The array summoned for a jury trial during school vacation included an inordinate number of teachers. The local practice did not provide for juror information cards. Instead, some basic information was obtained by preliminary voir-dire. The lack of randomness on the panel was therefore not apparent until the time to challenge the array had passed. Appellants complained of a defect in the method used to select the array. The court of appeals held that, under these facts, a motion for mistrial made *at the end of voir dire* properly preserved error. The court found that the appellants were denied their right to a fair and impartial trial before an impartial jury, fairly representative of the community because "the jury was not a randomly selected cross section of the community." *Id.* at 781.

In this case, appellants have made absolutely no showing that the actions of the district clerk resulted in any systematic exclusion of a particular group of jurors, nor have they made any showing that the district clerk's actions resulted in any lack of randomness in the impaneling jury.

The relevant facts are again worth noting. This case was called for trial on July 12, 1993. During the hearing on the motion for mistrial, Brenda Fudge recalled that she had summoned 250 potential jurors. Usually only 150 to 175 jurors would be summoned for a civil case. The reason for this larger number was, according to Fudge, the nature of the case and the fact that all parties were well known in the community.

The selection and summoning of the 250-member panel was handled not by the district clerk's office, but by the Tax Collector and the Sheriff of Frio County. On June 29, 1993, the Tax Collector, using his computer, generated a randomly selected list of 250 jurors. This list was received by the deputy district clerk, Dawn McCormick. The district clerk's office then certified that the list had been drawn and delivered it to the sheriff's office. The sheriff's office had the responsibility for preparing, sending out and monitoring any returned summons to the persons on the jury list. The sheriff's office delivered any envelopes returned as undeliverable to the district clerk's office. When the district clerk's office received these envelopes, a notation of "No Service" was made on the jury list beside each prospective juror's name whose summons had been returned.

Brenda Fudge was on sick leave from June 30, 1993 through July 7, 1993. Dawn McCormick was left in charge of handling juror excuses during Fudge's absence. Fudge took no excuses while she was out on sick leave, and she testified that she was only available to take excuses on the Thursday and Friday before trial, and on the morning of the trial.

It is undisputed that potential jurors were excused by personnel in the Clerk's office before voir dire, and that some of these excuses were not cleared by the presiding judge. The record suggests this was a custom to which the local district judge acquiesced. In any event, the majority cor-

rectly notes that most of the excuses were given for statutory exemptions, e.g., "kids" or "overage." Eleven names bear notations of "No Service" on the Clerk's working copy of the juror list. Fewer than twenty-five potential jurors were excused—without the approval of a district judge—for either no reason or a non-statutory excuse.[1] Of these, fewer than five were handled by the district clerk. Most of the excuses, in fact, were handled by Fudge's deputy, Dawn McCormick.

The majority, however, says it analyzes the record "through the unique prism of the relationships of the interested parties," a euphemism for the admitted intimate relationship between Brenda Fudge and David Massengale, the corporate representative of Texas Dyno Chem, Inc. Noting the admitted statutory violations of the jury selection process, the majority concludes there was a "materially unfair trial as a matter of law," and (noting it would reach the same decision under a harmful error analysis) holds the trial court abused its discretion. The implicit assumption is that Fudge was somehow manipulating the jury panel for the apparent benefit of her paramour, and that McCormick was in league with her.[2] Indeed, the majority concludes by observing that there is "a strong *inference* that the actions taken may have been intended to, and did, prejudice the rights of the appellants." (Emphasis added).

This inference cannot sustain our holding. Reading the majority opinion, I am reminded of Justice Nathan Hecht's observation that:

1. Of the non-statutory excuses, there are several references to non-residence. Other notations include "out of state," "out of county," "nursing home," "doctor's appointment," "disabled," and "hospital."

2. It is true that, as district clerk, Fudge was responsible for the people who worked in her office. Following the majority's reasoning, however, one would have to assume that Dawn McCormick was also part of this conspiracy. I find no support for such a contention in this record. The record shows that McCormick had a prior attorney-client relationship with Burl Brock, lead plaintiffs' counsel. During the hearing on the motion for mistrial Fudge testified as follows:

Several smoldering sticks, no one of them flaming, may together build a fire. But all the sticks there are, piled up without spark or heat, make neither smoke nor fire; they are nothing but a big pile of sticks, and one cannot infer from the pile that they must be afire.

*Mancorp., Inc. v. Culpepper*, 802 S.W.2d 226, 234-35 (Tex.1990) (Hecht, J., dissenting). Such is the case here, except that appellants offer us only a small pile of sticks. We should not supply by inference what they have failed to show us in the record.

Again, the issue is whether appellants knew or should have known there were irregularities in the jury selection. Only after suffering an adverse verdict did appellants complain of irregularities in jury selection. Prior to entry of judgment, appellants' trial counsel filed a motion for mistrial. During the hearing on that motion Mr. Brock, appellant's lead trial counsel, posed the following question to Dawn McCormick:

Ms. McCormick, do you recall during the voir dire process when we were at the bench and I raised the question about the number of jurors that showed up here and *basically made an objection about that* and that you responded that, yes, there had been excuses that had been granted but also talked about that people would go to Judge Strauss and seek those exemptions or Judge Saxon and would be granted exemptions? Do you recall that?

(Emphasis added). This is the moment, during voir dire, when counsel should have objected to the court (not the clerk), requested an inquiry, and if not satisfied with the result

Q Now, it's my understanding that Dawn McCormick has an attorney-client with Mr. Burl Brock. Do you have knowledge of that?
A That's my understanding.
Q And that's what she's indicated to you?
A Yes, ma'am.
Q He represents her in a lawsuit for the death of her son; is that correct?
A Yes, ma'am.
Q And that attorney-client relationship had existed well prior to the Mann–Ramirez case being called to trial; is that correct?
A Yes, ma'am.
Q And you understood that relationship existed well before this jury was summoned in this case and excuses being taken; is that correct?
A Yes, ma'am.

of that inquiry, presented his motion for mistrial. One cannot "basically" object.

Appellants' counsel was provided the jury list prior to trial. This list showed 250 names. Fewer than 100 potential jurors were summoned. Counsel's own question shows he asked the clerk about the number of prospective jurors that had been summoned. Yet, counsel apparently made no inquiry into the number of potential jurors who failed to appear for the panel. The record also shows counsel knew that some statutory exemptions had been granted. However, at no time did counsel attempt to check the method by which jurors were excused, such as asking for copies of the exemption certificates or asking the presiding judge about the excusing of jurors. It is this knowledge that makes the scenario more compelling than the facts of the *Sendejar* case, a precedent the majority disregards. *See id.* at 886.

As for Fudge's relationship with Massengale, there is evidence suggesting that appellants' trial counsel were aware of this relationship before the trial even started. During the hearing on the motion for mistrial, for example, Fudge testified:

Q Okay. Now, you've been the district clerk here in Frio County since 1989?

A Yes, ma'am.

Q Grady Roberts, one of the attorneys for plaintiff, and John Bull, one of the attorneys for plaintiff, you see them at least on a weekly basis, do you not?

A Yes, ma'am.

Q And for how many months or years before this trial have they been aware of your relationship with David Massengale of Texas Dyno Chem?

A Grady, I'm not real sure. I know that he knew it was going on at the time of the divorce. John, since he has been in Frio County.

Q So how long has John Bull been in Frio County?

A A few years. I don't remember exactly how long he's been here.

Q In essence though, let's say, the entire year of 1993, your relationship with David Massengale could come as absolutely no surprise whatsoever to Grady Roberts or to John Bull, could it?

A No, ma'am.

Q And, in fact, since Burl Brock has been associated with this case have you also or are you also aware that he's known of your relationship with David Massengale?

A If I'm not mistaken he has known.

More importantly, the majority gives scant regard to the work of the trial judge, who thoroughly inquired into appellants' allegations both at the hearing on the motion for mistrial and at the hearing on the motion for new trial. Not only was he the judge of the witnesses' credibility, but he witnessed much of the selection process. He had an opportunity to observe the litigants, the advocates, and the court personnel. Further, he thoroughly reviewed the events following the jury's verdict. He concluded the relationship between Fudge and Massengale, and the admitted irregularities in jury selection, did not result in the selection of an unfair jury. He also recognized that in many small Texas counties without resident judges, selection irregularities were inevitable. Given the record in this case, I see no reason to second-guess his decision.

To presume from this record that there was an abuse of discretion ignores both the record and established caselaw. By sanctioning a post-verdict challenge to the jury selection process, the majority is setting a dangerous precedent. There was no suggestion during the trial, nor is there one now, of a pattern to exclude any classification of jurors, nor any allegation that this jury was not randomly selected.[3] Essentially appellants complain that had they been able to select from more jurors, "there would have been at least forty-five more jurors in the room ...," not that they identified any jurors that would otherwise have been stricken. By the major-

---

3. There is a reference in appellants' reply brief to an alleged exclusion of the elderly from the jury panel. Such individuals, the argument goes, might have been more sympathetic to the plain-

tiff. There is, however, no support for this allegation in the record, nor was it brought to the attention of the trial court.

ity's own reckoning, appellants must show the trial which resulted against them was "materially unfair." They have not done so. To sustain their challenge now, given the record in this case, only encourages similar "discoveries" following adverse verdicts.

I believe the record in this case sufficiently indicates that appellants either knew or should have known there were irregularities in the jury selection process. Yet, they failed to raise any objection until after the verdict was returned. This, in my view, is a sufficient basis for concluding they waived any complaints regarding jury selection. I would therefore hold that appellants waived any right to complain of errors in the selection of the jury panel. I would overrule appellants' first and second points of error, and address their remaining points on their merits. I dissent.

## DISSENTING OPINION ON DENIAL OF EN BANC REVIEW[1]

DUNCAN, Justice, joined by GREEN, Justice.

The majority opinion in this case is more "dangerous" than is apparent from the dissent. The issue is not simply whether error was timely and properly preserved, the focus of the dissent, but whether this court is required to find trial court error at all— under the appropriate standard of review— *before* proceeding to a harm analysis. However much we may disagree on the substantive issues involved in this appeal, there is only one legitimate resolution of this procedural issue: All appellate courts are required in all cases to apply the appropriate standard of review and find trial court error before they proceed to a harm analysis. Because the majority has failed to adhere to this fundamental principle of appellate review in this case, I respectfully dissent from the majority's denial of en banc review.

The structure of the majority's opinion reveals its fatal flaw. The majority holds that a district court's failure to comply with statutes regulating the selection of petit jurors is not fundamental error; therefore, the error must be preserved by a timely objection and ruling. *Mann v. Ramirez*, 905 S.W.2d 275, 278 (Tex.App.—San Antonio 1995, n.w.h.) ("Fundamental Error"). The majority then holds that an objection to a district court's failure to comply with the statutes regulating the selection of petit jurors is timely, despite the fact that it is not raised until a post-verdict motion for mistrial and a post-judgment motion for new trial. *Id.* at 278–280 ("Waiver"). Inexplicably, however, the majority then presumes trial court error in the fourth sentence of its "Analysis" and turns immediately to a determination of whether the presumed error was harmful: "We must therefore examine the totality of the circumstances to determine whether the aggregate of errors, when assessed in combination with the relationship involved, raises the error to the level that would require a reversal of the trial court's judgment and the granting of a new trial."[2] Indeed, the majority does not even address the subject of trial court error until the concluding paragraph of its opinion. Even then, the subject is relegated to a single sentence, devoid of any legal authority or analysis: "We conclude the trial court abused its discretion in denying a mistrial and erred in failing to grant a new trial, in light of the totality of the record and the evidence adduced at the posttrial hearing."

In short, the flaw in the majority opinion is that it contains no analysis of trial court error under the appropriate standard of review. And it is this structural flaw in the majority's opinion that, in my view, obscures the fatal defect in the Manns' complaint regarding the selection of the jury.

As the majority recognizes, a challenge to the array is governed by Rule 221, TEX. R.CIV.P. The complaining party must therefore show that "the officer summoning the jury has acted corruptly, and wilfully summoned jurors known to be prejudiced against the party challenging or biased in favor of

---

1. Pursuant to Rule 100(f), a justice of this court called for en banc review. A majority of the justices of this court have denied en banc review.

2. Alternatively, since there has been absolutely no discussion in the majority opinion of trial court error prior to this point, the majority may be speaking of errors by the district clerk's office. We are not, however, charged with reviewing error by the clerk; we are charged with reviewing error by the trial court.

the adverse party." *Id.* at 278. The issue, of course, is the randomness of the jurors summoned or, in this case, not improperly excused.[3] The trial court's action in sustaining or overruling a challenge to the array is governed by an abuse of discretion standard. *Id.* at 283.

To establish an abuse of discretion, the complaining party must demonstrate that the trial court acted unreasonably, arbitrarily, or without reference to guiding rules and principles. *Downer v. Aquamarine Operators,* 701 S.W.2d 238, 241–42 (Tex.1985). Therefore, in the context of factual matters—such as whether the summoning officer "acted corruptly" or "wilfully summoned jurors known to be prejudiced against the party challenging or biased in favor of the adverse party"—the record must establish that the trial court could reasonably have reached only one conclusion, and it reached a contrary conclusion. *Walker v. Packer,* 827 S.W.2d 833, 839–40 (Tex.1992).

In this case, the trial judge made "a sincere effort to reach an appropriate decision, made a thorough inquiry into the [Manns'] allegations at both the hearing on the Motion for Mistrial and at the hearing on the Motion for New Trial. Moreover, the trial judge's comments from the bench reflected his understanding, gained from observation and personal experience, of unsanctioned procedural shortcuts which may be employed at times in the implementation of our justice system." *Id.* at 282–283. This court has also made a similar observation and, in fact, has refused to condone precisely the statutory violations that occurred in this case. *See Biegajski v. State,* 653 S.W.2d 624, 629 (Tex. App.—San Antonio 1983, pet. ref'd). But merely refusing to condone a statutory violation does not establish trial court error, as this court recognized in *Biegajski* in holding that the appellant in that case failed to demonstrate error because he made no effort to

attach the absent jurors in compliance with the Texas Code of Criminal Procedure. *Id.*

The question in this case therefore remains whether the trial judge erred—abused his discretion—because the record before him *required* a finding that the personnel in the clerk's office "acted corruptly" or "wilfully summoned jurors known to be prejudiced against the party challenging or biased in favor of the adverse party." If so, and presuming the error was timely and properly preserved, then the trial court abused its discretion by denying the motions for mistrial and new trial. If not, the Manns have not borne their burden of bringing forward a record demonstrating error, harmful or not.

In my view, the record in this case does not begin to establish an abuse of discretion. For instance, the trial court could easily have believed the office personnel's unequivocal and consistent testimony that the unauthorized excuses were standard procedure, however wrong they may have been, and that they were not intended "to affect any part of this process." If so, the fact of Dawn McCormick's relationship with the Manns' attorney was as irrelevant as Brenda Fudge's relationship with David Massengale, since neither relationship affected the jury selection process for or against the Manns. In short, the record before the trial court, in my view, easily permitted a finding that the office personnel did not, through their unauthorized excuses, "act[ ] corruptly" or "wilfully summon[ ] jurors known to be prejudiced against the [Manns] or biased in favor of [Ramirez or Dyno Chem]."

The majority concludes, however, that the evidence before the trial court raised "a strong inference" that "the actions taken *may* have been intended to, and did, prejudice the rights of the [Manns]." *Id.* at 283 (emphasis added).[4] However, "[t]he mere

---

3. The trial judge in this case phrased the issue similarly: "[D]o you really have defective proceedings when you don't necessarily follow the statute? That's the 64–dollar issue." *See Nolan v. United States,* 395 F.2d 283 (5th Cir.1968) (deputy clerk's office striking of prospective jurors she thought judge would excuse was improper, but not shown to have deprived list of requisite randomness); *cf. Rivas v. Liberty Mut.*

*Ins. Co.,* 480 S.W.2d 610, 612 (Tex.1972) (procedure in violation of Rule 223, Tex.R.Civ.P., is subject to harmful error analysis, and focus is on the randomness of the jury panel).

4. The majority's conclusion is noteworthy for a second reason. In holding that it would find reversible error even under the usual standard contained in Rule 81(b)(1), the majority con-

fact that a trial court may decide a matter within its discretionary authority differently from a reviewing court does not demonstrate that an abuse of discretion has occurred." *Downer*, 701 S.W.2d at 242. The mere fact that the majority finds a "strong inference" of an intent to corrupt the jury selection process is simply not dispositive of error analysis under an abuse of discretion standard.

In conclusion, I dissent from the majority's denial of en banc review because the analysis employed by the panel majority completely fails to comport with the most fundamental principles of appellate review. Some may view this as promoting form over substance. I do not. How many times do we, as judges, observe that if a litigant would honestly confront the applicable standard of review, she would realize the futility of her challenge? And how can we ask that practitioners do so when we are unwilling to lead the way? At the very least, this court should recognize and attempt to apply the appropriate standard of review to the record before the trial court *before* conducting harmful error analysis under either the *Tamburello* or Rule 81(b)(1) standard.

cludes its analysis by stating only that the record raises a "strong inference" that the statutory violations "prejudice[d] the rights of the [Manns]." Prejudicing a litigant's rights, however, is not the gist of harmful error under Rule 81(b)(1). To the contrary, the crux of harmful error is that the error complained of so prejudiced a litigant's rights that the error "probably did cause the rendition of an improper judgment." TEX.R.APP.P. 81(b)(1). These words are noticeably absent from the majority's harmful error analysis under Rule 81(b)(1).