Frances Finster TURNER, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–88–01135–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

March 12, 1992.

Published in Part Pursuant to
Tex.R.App.P. 90.

George O'Neil Jacobs, Houston, for appellant.

Jack R. Stern, Dist. Atty., for appellee.

Before MIRABAL, DUGGAN and O'CONNOR, JJ.

### OPINION

MIRABAL, Justice.

A jury found appellant, Frances Finster Turner, guilty of capital murder.[1] The trial court assessed punishment at life imprisonment. We affirm.

---

1. This was appellant's second trial for the same offense. Her first capital murder conviction was overturned on appeal. *See Turner v. State,*

In her second point of error, appellant contends the trial court reversibly erred in denying her demand for a shuffle of the jury panel. The facts surrounding the request are as follows:

Before the jury selection process began, appellant filed a request for the use of questionnaires and individual voir dire of the veniremen. During the pretrial hearing, on September 15, 1988, appellant's motion for questionnaires to be used was heard. The following exchange took place:

> [By Defense Counsel]: Regarding, and the Court wanted to take this up on the 15th, which is today, the Motion for Questionnaires to be used. And we have been put on notice that the Court has a questionnaire and we have one and [the State's counsel] has one, and you stated today that you wanted to figure out what questions we would be using, and we're ready to do that, Your Honor.
>
> The Court: What I would present to both counsel at this time, if you have a questionnaire I would like to have it submitted to me and I would like to have a conference with counsel next week at some time and we can do it during the regular Thursday morning docket call, if you can be here to go over that questionnaire with all parties present, including the Court, and we will come up with a questionnaire acceptable to all parties to submit to the jury first thing Monday morning.
>
> [Defense Counsel]: Your Honor, we do have, and you have in your Court records a Motion to use a Questionnaire, and we have included a questionnaire on that or would you like for me to hand you another one?
>
> The Court: If you could hand me one, I'll take it to chambers as my copy. Now, does the State have a questionnaire which it desires to use, and can you give a copy of that to the defense and to me so that I will have sufficient time to review that.

715 S.W.2d 847 (Tex.App.—Houston [14th Dist.] 1986, no pet.).

The Court was then told that Friday was a holiday and if the questionnaire was lengthy it would present a problem, "secretarial-wise," and Wednesday was suggested as an alternative meeting date. That date was accepted. Appellant's counsel then asked the trial court:

[By Defense Counsel]: Your Honor, we would ask the Court regarding the actual September 26th date as to how the Court is considering moving forward with this case as far as how they're going to answer the questionnaire, when they are going to answer it, when we actually sit down and start selecting our jury panel, if the Court can give us notice of that so we may prepare.

The Court: It is my intent and thought at this time that we will call and assemble the entire panel, which I understand they are calling a hundred and fifty (150) potential jurors, veniremen for the panel. I will make, and I would expect counsel and defense to be there at that time, which the Court will introduce the counsel and the defendant to this panel. I will ask the general questions and give some general instructions. The questionnaires will be handed out. They will be instructed to return the questionnaire that day. In other words, they will all be expected to complete the questionnaire that day and return it, they will be given a time and a date to return to the Court for examination. I am going to ask that they—that the jurors return on the hour every hour beginning the 27th. We will start the individual examination of each juror at 9:00 a.m. on the 27th. Say you will have the night and the 26th, the afternoon of the 26th to review the questionnaires, and we will proceed with an hour's examination of each juror when we schedule them. If it appears that we're going to need more than an hour to examine each juror then I will adjust the schedule accordingly, but it's my intent at this time to ask the jurors to come in individually, and I'll give them a time and a date to come in to begin their examination as we are able to sit the twelve (12) jurors we will proceed accordingly. Now that's a suggestion at this point in time,

if there are any suggestions from counsel I will take that up.

[Defense Counsel]: I think that's fine, your Honor, and just so it will be easier for the State and the defense will be ready as to, give them a number and have them number their questionnaires so that we will know Mary so-and-so is going to be number one (1) on Tuesday morning.

There were two panels of prospective jurors. On September 25, 1988, the trial judge heard juror excuses in his chambers. Thirteen prospective jurors were excused. The first panel was then addressed in open court, with counsel present. The trial court explained certain terms, such as "reasonable doubt," handed out the questionnaire, allowed both sides to address the jury panel, and then scheduled the prospective jurors for individual voir dire appointments.

After the excuses from the prospective jurors on the second panel were heard by the trial court, the State and appellant's attorney stipulated that a copy of the list of the prospective jurors had been furnished to the defense at least two days before the beginning of trial. The trial court also noted for the record that a jury list was ordered delivered to counsel, through the district clerk's office, prior to the beginning of trial. The trial court then addressed the second panel in the same manner as it had addressed the first.

The individual voir dire process began on September 26, 1988. Prior to the commencement of the voir dire, the trial court asked: "Any announcements to be made by the parties before calling our first juror in?" Both sides replied: "No, your honor."

The voir dire continued for several weeks, the trial court allowing only challenges for cause to be exercised. On October 19, 1988, voir dire of the second panel started. On October 24, 1988, another panel was called, prospective jurors were excused, questionnaires were handed out, the attorneys were introduced, both sides addressed the panel, the questionnaires were returned, and individual voir dire appointments were given. The tailsmen from an-

other venire were also called on October 24, 1988, their excuses were heard, they were addressed as a panel by the trial court and both sides, and they filled out a questionnaire and were given voir dire appointment times. After the final venireperson was questioned, the trial judge said:

> The Court: Gentlemen, do you have any motions that you wish to take up at this time? We have concluded jury selection—well, not selection, but have concluded qualification of the jurors to be on the panel from which the jury will be selected. Are there any motions that you would like to take up at this time, the State or the Defense?

Appellant requested nine extra peremptory strikes, listing the prospective jurors she challenged for cause that the trial court had denied, and the objectionable jurors they would have to take as a result of using peremptory strikes to remove the challenged jurors. The trial court then said:

> The Court: Before we go any further, as I indicated to counsel in a chambers conference, I was going to allow upon proper request a reshuffle of this panel prior to the final selection. The numbers that—and the names that you have given at this point in time are prior to that shuffle. Now if the Defense nor the State request a shuffle this order (to allow extra peremptory strikes) would be appropriate.
>
> [By Defense Counsel]: We go along—we would request a shuffle, Judge, that would make certain that the two last jurors were satisfactory to the Defendant and could possibly be in the first 46.
>
> The Court: I will allow a shuffle.
>
> [By the State]: Judge, we object to the shuffle.

A discussion between the State and the trial court followed. The State objected because voir dire had already taken place. The trial court replied all panels had been shuffled prior to their original appearance, and asked the State if it had authority for its contention that a request for jury shuf-

fle was untimely after the commencement of voir dire. The State presented case law indicating a shuffle request "must" be made before voir dire commences, or it is not a timely request.

After reading the cases presented by both sides, the judge withdrew his statement about allowing a jury shuffle. The parties and the trial court stipulated that 117 potential jurors had been called, the courtroom was physically unable to accommodate that many people, and three panels, as well as the tailsmen from a fourth panel, had to be called to get a panel of 48 to hear the case. The trial court gave two extra peremptory strikes to appellant.

■ Article 35.11 of the Texas Code of Criminal Procedure[2] creates a statutory privilege allowing the parties in a criminal trial to have the names of the prospective jurors shuffled. Article 35.11 has been interpreted as calling for the parties to be allowed the opportunity to view the venire seated in proper sequence and then have the option to have the names shuffled. *Williams v. State*, 719 S.W.2d 573, 575 (Tex.Crim.App.1986); *Stark v. State*, 657 S.W.2d 115, 117 (Tex.Crim.App.1983). However, this interpretation does not require the trial court to afford the defendant anything more than being able to view the outward appearance of the venire members. *Davis v. State*, 782 S.W.2d 211, 214 (Tex.Crim.App.1989), *cert. denied*, 495 U.S. 940, 110 S.Ct. 2193, 109 L.Ed.2d 520 (1990). It was not the intent of the legislature to have the names shuffled based upon information obtained during voir dire, gleaned from jury information cards and/or biographical questionnaires. *Id.*

■ Upon timely demand of the defendant or his attorney, or the State's counsel, the trial court must shuffle the names of the prospective jurors on the assigned panel. *Latham v. State*, 656 S.W.2d 478, 479 (Tex.Crim.App.1983). This is an absolute right and, on appeal, the appellant need not show harm in order to receive a new trial. *Id.* The refusal of a motion to shuffle,

**2.** Act of June 18, 1965, 59th Leg., R.S., ch. 722, § 1, 1965 Tex.Gen.Laws 317, 446, *amended by*

Act of June 5, 1991, 72nd Leg., R.S., ch. 337, § 1, 1991 Tex.Gen.Laws 1384.

when timely made, is automatic reversible error. *DeLeon v. State*, 731 S.W.2d 948, 949 (Tex.Crim.App.1987); *Williams*, 719 S.W.2d at 575; *see Yanez v. State*, 677 S.W.2d 62, 70–71 (Tex.Crim.App.1984) (Clinton, J., concurring).

■ However, a motion to shuffle must be timely presented to the trial court and such motion is untimely if presented after voir dire has commenced. *Williams*, 719 S.W.2d at 575. In a noncapital murder trial, voir dire commences when the State begins its examination of prospective jurors, not when the judge begins his/her initial instructions. *Id.* However, TEX. CODE CRIM.P.ANN. art. 35.17(2)[3], provides:

> In a capital felony case, the court shall propound to the entire panel of prospective jurors questions concerning the principles, as applicable to the case on trial, of reasonable doubt, burden of proof, return of indictment by grand jury, presumption of innocence, and opinion. Then, on demand of the State or defendant, either is entitled to examine each juror on voir dire individually and apart from the entire panel, and may further question the juror on the principles propounded by the court.

Article 35.17(2) contemplates that in capital murder cases, the voir dire commences when the trial judge begins his examination of the panel. *Davis*, 782 S.W.2d at 215.

In the present case, the motion to shuffle was not presented until after the initial article 35.17(2) instructions and questions by the trial court had taken place, panel members were given instructions to return for individual voir dire appointments, and the individual voir dire had taken place. Therefore, it is clear appellant had no absolute right to have the jury shuffled because her motion to shuffle was made after voir dire was commenced, and therefore was untimely.

■ Appellant complains she was never given an opportunity to see the whole venire in their proper places, prior to the commencement of the trial court's general voir dire, in order to determine whether to request a shuffle, and therefore she had no real opportunity to request a shuffle. Appellant contends that the way the jury qualification and voir dire were handled denied her the right to a jury shuffle, because she was never afforded the opportunity to request a shuffle of the "qualified" jurors.

■ Generally, a defendant has the right to see the jury panel seated before demanding a jury shuffle. *Eldridge v. State*, 666 S.W.2d 357, 358 (Tex.App.—Dallas 1984, pet. ref'd). However, where the record reflects that the appellant filed motions prior to trial, which are granted by the trial court, requesting the jury selection to be conducted in a certain manner, and where the procedure is followed, and the record reflects that no objection was made to the procedure, the failure to object waives the right to complain on appeal. *Valdez v. State*, 472 S.W.2d 754, 757 (Tex.Crim.App. 1971).

Appellant filed pretrial motions, requesting the use of questionnaires and individual voir dire. The trial court granted the motions. The courtroom facilities could not physically accommodate in one room the 117 potential jurors who were called. Therefore, the four different "panels" had to be addressed separately by the court and counsel. Appellant did not object to the manner of jury selection. We hold the trial court did not abuse its discretion under the circumstances of this case.

We overrule point of error two.

The discussion of the remaining points of error does not meet the criteria for publication. TEX.R.APP.P. 90. It is thus ordered not published.

The judgment is affirmed.

**3.** Act of June 14, 1973, 63rd Leg., R.S., ch. 426, § 5, 1973 Tex.Gen.Laws 1122, 1127, *amended by* Act of June 16, 1991, 72nd Leg., R.S., ch. 652, § 6, 1991 Tex.Gen.Laws 2394.