**Marion CARR and Thomas Carr, Appellants,**

v.

**Gregory H. SMITH, D.O., Appellee.**

**No. 2–99–245–CV.**

Court of Appeals of Texas, Fort Worth.

June 29, 2000.

Sue Walker, Law Office of Sue Walker, Michael T. Watson, Watson & Parker, P.C., Fort Worth, for appellant.

Jordan M. Parker, Evelyn R. Leopold, Cantey & Hanger, L.L.P., Fort Worth, for appellee.

Panel B: LIVINGSTON, DAUPHINOT, and HOLMAN, JJ.

## OPINION

TERRIE LIVINGSTON, Justice.

Marion and Thomas Carr, appellants, sued Gregory H. Smith, D.O. and Scott Allen, M.D. for medical malpractice. The only issues appellants present for review after their two-week jury trial relate to the propriety of the jury shuffle granted by

the trial court on Allen's motion. We reverse.

## Procedural Background

About a month before trial, one of the defendants, Scott Allen, M.D., filed a motion to use a confidential juror questionnaire form during voir dire. The proposed questionnaire contained 54 questions and included specific questions regarding juror personal information, education, employment, and beliefs. It also included inquiries into juror history or involvement with litigation and medical treatment. Appellants filed a response to Allen's motion indicating their approval of the submission of the 54 questions so long as the questionnaire included an additional nine questions they proposed. Although there is no order showing the court granted Allen's motion, the questionnaire, with all 63 questions, was submitted to the 60 panel members to fill out while they were in the central jury room.

The panel members were segregated in the central jury room, by jury numbers one through 60. Once segregated, they were sworn and all counsel had an opportunity to view the panel members in their seated order. Counsel for appellants and paralegal for appellee viewed the panel. All counsel received the standard jury information cards. The panel members filled out the questionnaires and all counsel received copies to review overnight before starting trial the next day. The next morning Allen's counsel requested a rule 223 jury shuffle. Appellants objected. They argued that the request came too late because voir dire had already begun when all counsel received and had the opportunity to review the extensive juror questionnaire. *See* Tex.R. Civ. P. 223. The court overruled their objection and shuffled the jury.

Sometime during the hotly contested trial, appellants non-suited Allen. The jury ultimately returned a verdict in favor of Smith, the appellee.[1] Appellants' subsequent motion for mistrial was denied, and their motion for new trial claiming the trial court erred by granting Allen's request for a jury shuffle was overruled by operation of law.

## Issues Presented

Appellants present four issues for determination by this court. First, they ask whether a party may evaluate information in a detailed questionnaire before they decide to exercise their right to a jury shuffle and whether granting a shuffle, despite a timely objection, is error. Second, they ask us to decide the proper remedy for an erroneous or untimely shuffle and whether the granting of an untimely shuffle violates a party's constitutional right to a trial by jury. In response, appellee claims appellants' objection made at the time the shuffle was requested was insufficient to preserve error, and that appellants should have done more at three other stages of the proceeding: when their objection to the shuffle was overruled; after the shuffle was completed; and after voir dire, before exercising their peremptory challenges. Third, appellee contends that voir dire had not yet commenced when Allen requested the shuffle, even though all parties had reviewed the answers to the questionnaire and, even if granting the shuffle was error, appellants have failed to show harm. Lastly, appellee contends that it would be unjust and inequitable to require a retrial due to the action of a party who was non-suited and is no longer involved in the appeal or any further proceedings. First, we will address whether error has been properly preserved.

## Preservation of Error

■ According to Texas Rule of Appellate Procedure 33.1(a)(1), to preserve ap-

---

1. Appellants and intervenor, American Home Assurance Company, also non-suited Open MRI Of Dallas, L.C. post-trial.

pellate review of error the record must show the party made a complaint to the trial court by a timely request, *objection,* or motion that clearly brings to the court's attention the basis of the complaint and the trial court ruled on the request, objection, or motion or refused to do so. TEX. R.APP. P. 33.1(a)(1). *Appellants met this requirement.*

When Allen moved for the shuffle appellants objected stating, "[T]he Plaintiff [appellants] would make its formal objection to the shuffling of the jury panel." The court held a hearing on this issue on the record. The appellants pointed out that the court had given all parties the opportunity to view the panel the day before, that all panel members had completed and returned their questionnaires, that all counsel had received copies of their responses the afternoon before, and had an opportunity to review all their responses overnight, before Allen made his demand for shuffle. Specifically, counsel for appellants objected to the grant of the shuffle because review of the responses by counsel for all parties constituted the beginning of voir dire under the rules. Counsel for Allen argued that voir dire had not yet commenced and would not commence until the attorneys began their verbal questioning of jurors.

By their responses, it is quite clear that all counsel and the court understood the objection being made and its basis. We therefore conclude that error was preserved. We now address appellants' issues one and two.

### When Does Voir Dire Begin?

■ The answer to this question is controlled by the application and interpretation of rule 223 of the Texas Rules of Civil Procedure. That rule states:

> [T]he trial judge ... upon the demand *prior to voir dire examination by any party or attorney in the case* ... shall cause the names of all members of such assigned jury panel ... to be ... shuffled ....

TEX.R. CIV. P. 223 (emphasis added). Here, the trial court overruled appellants' objection and granted Allen's shuffle. Apparently, counsel for appellee made no objection and, although present at the hearing on the objection, made no comments and voiced no complaints. At the time Allen requested the shuffle, the venire panel had been sworn and segregated in the jury pool room, had completed juror information cards, and had turned in their responses to the questionnaire. Appellants argue the dissemination and subsequent review of the fact-specific questionnaire constitute the beginning of voir dire whereas appellee contends voir dire does not commence until the venire panel is brought into the court where they will be serving, is viewed there by counsel, and verbal questioning by counsel and the court has begun. Appellee also argues that the use of juror information cards and questionnaires that provide basic juror information does not constitute the beginning of voir dire. [Id.]

Appellee originally argued that this court's opinion in *Garza v. State* was not controlling because it was a criminal case involving rules relating to shuffles under the Texas Rules of Criminal Procedure as opposed to rule 223 of the Texas Rules of Civil Procedure. *Garza v. State,* 988 S.W.2d 352 (Tex.App.—Fort Worth), *rev'd,* 7 S.W.3d 164 (Tex.Crim.App.1999). In *Garza,* this court held in a criminal case, the right to a shuffle under the code of criminal procedure article 35.11 must be exercised before voir dire begins—that is, before reviewing juror information cards or biographical questions. TEX.CODE CRIM. PROC. ANN. art. 35.11 (Vernon Supp.2000); *Garza,* 988 S.W.2d at 356. The court of criminal appeals reversed, holding voir dire had not begun after a review of juror information cards or biographical questions. Appellee, and now the dissent, claim the court of criminal appeals' *Garza* opinion applies and answers the question: when does voir dire begin? *Garza,* 7

S.W.3d at 165–66. We do not believe *Garza* is controlling.

■ First, *Garza* is a criminal case interpreting a provision in the code of criminal procedure that is silent on when voir dire begins or when the right to request a shuffle has expired. *See* TEX.CODE CRIM. PROC. ANN. art. 35.11. Neither it nor the cases interpreting it are binding precedent because the court of criminal appeals is not a reviewing court with jurisdiction over this issue. *See Robbins v. HNG Oil Co.*, 878 S.W.2d 351, 361 (Tex.App.—Beaumont 1994, writ dism'd w.o.j.); *see also Anheuser–Busch Cos., Inc., v. Summit Coffee Co.*, 934 S.W.2d 705, 708 (Tex.App.—Dallas 1996, no writ) (op. on remand). Second, the rules of civil procedure, not the code of criminal procedure, control in a civil matter. *See* TEX.R. CIV. P. 2; TEX.CODE CRIM. PROC. ANN. arts. 1.02, 1.03 (Vernon 1994). Third, rule 223 of the rules of civil procedure and code of criminal procedure article 35.11 are worded differently. Article 35.11 does not dictate *when* voir dire begins as does rule 223. · TEX.R. CIV. P. 223; TEX. CODE CRIM. PROC. ANN. art. 35.11. Here, the rule of civil procedure clearly states that a right to a shuffle in a civil case must be requested *"prior to voir dire examination by any party or attorney in the case."* TEX.R. CIV. P. 223 (emphasis added). The civil rule specifically mandates the trial court to grant a shuffle if timely requested and even specifies how the shuffle is to be handled. Additionally, the civil rule clearly states only one shuffle is to be granted. *See id.*

Finally, the dissent focuses on the fact that the *Garza* jury had also completed a juror questionnaire, implying it was similar to the lengthy, fact-specific questionnaire used here. Actually, the *Garza* opinion does not identify the source of the questions, who drafted the questionnaire, whether it was approved by all parties, the number of questions asked or the depth or specifics of the questions.

Here, however, we are dealing with a detailed thirteen-page questionnaire of 63 questions. And these questions go far beyond name, rank, and serial number. For example, question 30 asks each juror whether the juror or any family member has had any training or education in the legal field, the medical field, or specifically any X–Ray, MRI or CT training. Question 35 directs the jurors to disclose whether they have, or any family member has had, any of the back or disk surgeries listed. While all these questions are appropriate, they are detailed, specially-tailored inquiries into the jurors' life experiences and prejudices directly related to the underlying claim. Because of these distinctions and because *Garza* is a criminal case dealing with a criminal statute, we are not bound by it and do not apply it to this case. Instead, we look to civil precedent to determine the propriety of a granted jury shuffle, whether harm need be shown, and what remedy, if any, may be appropriate.

■ As appellants note, there is no constitutional or fundamental right to a jury shuffle, it being a creature of statutory and common law. But, appellants continue, the right to trial by jury is a fundamental and constitutional right. *See* U.S. CONST. amend VII; TEX. CONST. art. I, § 15. And, they say this right assumes the right to a fair and impartial jury that has been selected in accord with the procedural rules and safeguards imposed by the legislature. *See Jackson v. Golden Eagle Archery, Inc.*, 974 S.W.2d 952, 958 (Tex. App.—Beaumont 1998, pet. granted). Appellants argue that to allow a jury to proceed after an untimely shuffle has been granted destroys the randomness inherent in the original jury panel list and of the renumbered list after a timely requested shuffle. We agree.

■ To grant a shuffle after parties and counsel have had the opportunity to review substantive responses based upon written questions, as opposed to oral questions in the courtroom, makes no sense. The distinction between oral and written question-

ing is virtually meaningless, especially where each party has already had the opportunity to view the panel. The distinction between the type of information solicited in a standard jury form card and that of a detailed, case specific questionnaire should be the focus of the inquiry, not whether the questions are asked verbally or in writing. After the venire panel has been sworn and once substantive inquiry begins and responses have been observed or made available to the parties or their counsel, whether verbally or in writing, voir dire has begun. Again, the critical focus is on whether substantive inquiry has begun with case specific questions, not necessarily the number of questions or who drafted them, as the dissent erroneously states. We therefore hold the trial court erred when it granted Allen's untimely demand for a shuffle. We sustain appellants' first and second issues and overrule appellee's first reply issue.

## Reversible Error

■ The resolution of appellants' third issue-their remedy-necessarily focuses on the appropriate harm analysis to apply. According to appellants, they need not show harm. Appellee contends they must show harm under appellate rule 44.1(a) that provides in a civil matter:

No judgment may be reversed on appeal on the ground that the trial court made an error of law unless the court of appeals concludes that the error complained of:

(1) probably caused the rendition of an improper judgment; or

(2) probably prevented the appellant from properly presenting the case to the court of appeals.

TEX.R.APP. P. 44.1(a). Appellee repeats that appellants waited too long to seek their remedy; that their motion for mistrial filed weeks after the trial was complete was simply too late and makes their burden of showing harm insurmountable.

The record shows appellants filed their motion for mistrial on February 10, 1999, within thirty days of the trial's conclusion. The court held the hearing and denied appellants' motion on April 21, 1999 by order dated July 13, 1999. The trial court signed the final judgment on May 3, 1999 and appellants filed a motion for new trial on May 28, 1999 that was subsequently overruled by operation of law without further hearing.

As we held above, appellants preserved error by objecting to the shuffle and making the basis of their complaint clear to the court. Thus, they were not required to move for a mistrial, but they did need some mechanism, like a motion for mistrial or new trial, to get evidence of the error and any resulting harm in the record. This is especially true since voir dire was not reported and that record is therefore unavailable to us. See TEX.R. CIV. P. 329; TEX.R.APP. P. 33.1(b), 33.2. Appellants liken the grant of an untimely shuffle to the denial of the constitutionally-protected right to a fair and impartial jury, selected at random. See U.S. CONST. amend. VII; TEX. CONST. art. I, § 15; cf. Rivas v. Liberty Mut. Ins. Co., 480 S.W.2d 610, 612 (Tex.1972) (denying timely request for shuffle did not violate right to trial by jury because randomness of jurors' selection was not impaired). They argue that because this is a fundamental right guaranteed by our constitutions, the improper grant of shuffle is tantamount to a denial of one's right to a trial by jury. To the extent the statutorily created right to a shuffle is improperly granted, we agree.

This court has previously addressed the issue of how to preserve error and what type of harm, if any, must be shown to challenge the randomness of a jury panel. In Mendoza v. Ranger Ins. Co., the appellant contended she was denied her right to a fair and impartial jury due to the lack of randomness in the impaneling process when ten of the original twenty-seven panelists were teachers. See Mendoza v. Ranger Ins. Co., 753 S.W.2d 779, 780 (Tex. App.—Fort Worth 1988, writ denied). Out

of the remaining twenty panelists not struck for cause, half were still teachers. *See id.* at 780. Evidence adduced at the hearing on her motion for new trial showed that instead of using the random list of jurors generated by data processing, the administrative judge used a jury list comprised of jurors who had previously postponed their service. *See id.* Apparently, teachers are often granted postponements in the months of March, April and May. And, instead of mixing the postponement list with the regular list, the panel of prospective jurors assigned to that trial court that day was comprised of a disproportionate number of teachers. At the time, no juror information cards were used in Tarrant County and the judge of that court usually began voir dire by asking the panel members their occupations before turning over voir dire to counsel. As soon as counsel for appellant realized most of the venire members were teachers, he objected to the panel and moved for a mistrial. The trial court denied his motion. This court reversed and remanded for a new trial noting that counsel had objected as soon as reasonably practicable under the facts of the case, i.e., he could not have objected to the administrative judge in charge of impaneling because he could not have known of the limited list at that time. *See id.* Further, this court noted that the appellant had actively asserted her rights and moved for a mistrial on those grounds, and that she had sufficiently developed a record to establish her jury was impermissibly assembled and was not an impartial group fairly representative of the community—one that was randomly selected. *See id.* at 780–81. "The necessity to prevent the subtle erosion of the standards of the jury system does not require a showing by appellant of injury." *Id.* at 781 (citing *Glasser v. United States,* 315 U.S. 60, 87, 62 S.Ct. 457, 472, 86 L.Ed. 680 (1942)). The *Mendoza* case appears to answer two questions: when do you have to object and what harm or injury do you have to show—the precise questions raised

in this case albeit in a different factual setting.

A later case also addressed these two issues. In *Mann v. Ramirez,* the San Antonio Court held that errors occurring in the jury selection process are not fundamental error and can be waived. 905 S.W.2d 275, 278–79 (Tex.App.—San Antonio 1995, writ denied). In analyzing supreme court precedent dealing with errors in the jury selection process, as well as this court's *Mendoza* opinion, the San Antonio Court concluded appellate courts should review these types of error by seeing if the trial of the case resulted in a "materially unfair trial." *Id.* at 280 (citing *Mendoza,* 753 S.W.2d at 781); *e.g., Rivas,* 480 S.W.2d at 611–12. The San Antonio Court held that requiring strict compliance with a rule 44.1 harm analysis would result in the "subtle erosion of the standards of the jury system" and should therefore not require a showing of injury. *Id.* at 280 (quoting *Mendoza,* 753 S.W.2d at 781). The court noted that parties have a constitutional right to trial by a jury selected in substantial compliance with law and that this right is guaranteed by both the federal and state constitutions. *See id.* at 281 (quoting *Tamburello v. Welch,* 392 S.W.2d 114, 117 (Tex.1965)).

█ We adopt the "relaxed" harmless error standard of review otherwise applied in the jury selection context. This standard requires the complaining party to show that the trial was materially unfair, without having to show more. *See Lopez v. Foremost Paving, Inc.,* 709 S.W.2d 643, 644 (Tex.1986); *Patterson Dental Co. v. Dunn,* 592 S.W.2d 914, 921 (Tex.1979); *Mann,* 905 S.W.2d at 281. It also requires the appellate court to examine the entire record. *See Lopez,* 709 S.W.2d at 644; *Patterson,* 592 S.W.2d at 921.

█ While it would be unreasonable to require a complaining party to show specific harm like that required to preserve error for failing to grant a challenge for cause, we should at least review the

factors noted by the supreme court in *Patterson* that will help us assess whether the trial was hotly contested. *Patterson*, 592 S.W.2d at 921. When a trial is so hotly contested and the evidence sharply conflicting, "the error results in a materially unfair trial without showing more." *Id.* We should consider the number of special issues submitted, the count of the verdict, and the absence of summary judgment motions or motions for instructed verdicts. *See Mann*, 905 S.W.2d at 281, (citing *Patterson*, 592 S.W.2d at 921). Other factors should also be reviewed: the pleadings and the jury findings; whether the record shows how the parties used their strikes and whether they exercised all their strikes; and, whether there were any double strikes. *See id.* at 281, (citing *Lorusso v. Members Mut. Ins. Co.*, 603 S.W.2d 818, 822 (Tex.1980)).

Another supreme court case noted by the *Mann* court is *Lopez*, 709 S.W.2d at 644. In *Lopez*, the supreme court applied the relaxed harmless error standard after looking at the conflicting testimony of both the plaintiff's and defendant's witnesses and experts, the fact that the jury had been deadlocked at one point, and the fact that the final verdict was a 10–2 vote. The court also observed the methods of cross-examination and the level of cooperation between counsel to avoid double strikes. *See id.*

 This case was hotly contested and the evidence sharply conflicting. *See Patterson*, 592 S.W.2d at 921 (hotly contested trial and conflicting evidence, without more, supports finding that trial was materially unfair). The pleadings that the parties went to trial on show the parties contested virtually every issue. The trial lasted two weeks during which time both sides presented experts who gave testimony that was diametrically opposed. The plaintiffs offered 42 exhibits during the trial and the only pre-trial motion for summary judgment that was granted was a partial motion in appellee's favor as to mental anguish and emotional distress

damages. The case was never mediated pre-trial and one of the two alternate jurors found in favor of the appellants in the amount of $2.5 million dollars. The clerk's record also shows that both parties filed extensive motions in limine and appellee filed extensive charging requests. The record only shows that appellants used three strikes; the partial record does not show how many strikes the sides had or used, or whether there were any double strikes. Although appellants requested only a partial record under rule 34.6(c) of the rules of appellate procedure and they are bound by that record, we must presume the partial record constitutes the entire record for purposes of reviewing their issues. Tex.R.App. P. 34.6(c)(4).

 Even though this relaxed harmless error standard does not require a specific showing of prejudice or harm, it requires some showing that the randomness of the jury has suffered. Here, this was accomplished at the hearing on appellants' motion for mistrial where they showed jurors who originally were assigned high numbers were moved within the strike zone after the shuffle, i.e., fourteen jurors who would not have been reached in the original configuration were shuffled into the strike zone.

Because appellants' trial was materially unfair under this relaxed harmless error standard and the randomness of the jury selection suffered, the trial court erred by granting the jury shuffle and should have granted appellants a new trial. We therefore sustain a portion of appellants' third issue to the extent it complains of the untimely shuffle and the court's failure to grant the mistrial, but overrule it to the extent it requires a showing of prejudice. We also sustain appellants' fourth issue asserting that granting a jury shuffle after the beginning of voir dire violates the constitutional right to a fair and impartial jury. We overrule appellee's second and third reply issues. We must, however, address appellee's reply issue number four.

### Appellee's Equitable Argument

 Appellee also raises a very compelling equitable argument. Appellee points out that defendant Allen, not appellee, requested the untimely shuffle. Additionally, appellee was not the party who requested the juror questionnaire. And Allen, who requested the shuffle, was later non-suited during the trial and would not therefore suffer the harm or expense of going through a new trial should this court order one. We note, however, that appellee has cited us to no authority compelling the application of any equitable principles to a situation such as this and appellants have provided no response to this issue. *See* Tex.R.App. P. 38.1(h). Should appellee now be entitled to assert an equitable remedy when he raised no objection to Allen's non-suit or to the improper shuffle? We think not. The rules require the complaining party to object to a court's action to preserve appellate review of the complaint even when there are multiple parties. *See* Tex.R.App. P. 33.1; *see also Owens–Corning Fiberglas Corp. v. Malone*, 916 S.W.2d 551, 556 (Tex.App.—Houston [1 st Dist.] 1996), *aff'd on other grounds*, 972 S.W.2d 35 (Tex.1998); *General Motors Acceptance Corp. v. Harris County Mun. Utility Dist. No. 130*, 899 S.W.2d 821, 825 (Tex.App.—Houston [14 th Dist.] 1995, no writ). At the time appellants objected to Allen's requested shuffle, appellee lodged no complaint. And additionally, it appears, based on the record before us, that appellee agreed with or at least did not file any pretrial motions objecting to the use of the questionnaire, the source of the issues raised by this appeal. *See* Tex.R.App. P. 34.6(c)(2). We cannot agree that appellee preserved its equitable complaint for review and overrule its fourth reply issue.

### Conclusion

Because we have determined that appellants properly preserved their objection to the shuffle, the shuffle was untimely granted, and the trial court should have either granted appellants' motion for mistrial or new trial, we reverse the judgment of the trial court and remand the case to the trial court for a new trial.

LEE ANN DAUPHINOT, J. filed a dissenting opinion.

LEE ANN DAUPHINOT, Justice, dissenting.

I respectfully dissent to the majority's conclusion that voir dire begins when the attorneys read the jury questionnaires, and that a request for a jury shuffle after reading the questionnaires comes after voir dire has begun and therefore is untimely.

The Texas Supreme Court and the Texas Court of Criminal Appeals have taken steps in the last several years to create consistency between the civil and criminal rules of evidence and of appellate procedure. Additionally, the court of criminal appeals has stated that the standard for reviewing the factual sufficiency of the evidence in a criminal case encompasses the same standards utilized in civil jurisprudence for reviewing the factual sufficiency of the evidence.[1] Although there are significant differences between civil and criminal law and procedure, such as the burden of proof and burden of production of evidence, these differences are often rooted in constitutional mandate. Areas of difference not based on constitutional requirements are eroding. This trend is especially evident in discussions of criminal pretrial discovery.

I am disturbed, therefore, that the majority attempts to distinguish jury shuffles in civil cases from jury shuffles in criminal cases, when the civil and criminal provisions for jury shuffles are essentially the same. The procedure for shuffling a jury in a civil case is found in rule 223 of the

---

**1.** *See Johnson v. State*, 23 S.W.3d 1, 10–11(Tex.Crim.App. 2000).

rules of civil procedure, while article 35.11 of the code of criminal procedure governs jury shuffles in criminal cases.[2] Both rule 223 and article 35.11 mandate a timely shuffle, specify how the shuffle will be carried out, and permit only a single shuffle.[3]

To be timely, a shuffle request in a civil case must be made "prior to voir dire examination by any party or attorney in the case."[4] Although article 35.11 does not specifically state when a shuffle request in a criminal case must be made in order to be timely, the court of criminal appeals has held that a shuffle request is timely if it is made prior to the commencement of voir dire.[5] Thus, a request for a jury shuffle in either a civil or a criminal case must be made before the start of voir dire. The critical issue, therefore, is when does voir dire begin. While it appears that no Texas court has specifically decided when voir dire begins in a civil case, numerous Texas courts have addressed this issue in the context of a criminal case.

The traditional rule in Texas is that the parties to the lawsuit, not the trial judge, conduct the voir dire examination of the jury panel for the case, although the trial judge controls the voir dire and may participate in the voir dire.[6] The *Williams* court noted that in revising the code of criminal procedure in 1965, "the Legislature, acting upon the recommendations of the State Bar Committee on the Revision of the Code of Criminal Procedure, per-

ceived, in a new statute, 'voir dire' to be that examination of the jury panel conducted by the prosecution and defense."[7]

Consequently, Texas courts have repeatedly held that, in a non-capital criminal trial, voir dire begins when the prosecutor actually begins to speak after being recognized by the trial judge and after the trial judge has made his or her preliminary remarks and has sworn and qualified the panel.[8] "If it was held otherwise, then any judge, by interspersing voir dire type questions among introductory remarks to the jury panel for the cause, could sua sponte deny a defendant his absolute right to a jury shuffle upon timely motion and render a mandatory statute meaningless."[9]

Furthermore, the court of criminal appeals recently has addressed the effect of jury questionnaires on the shuffle process.[10] In *Garza*, the jury panel members completed written questionnaires containing detailed questions beyond the type of questions found on the standard jury information cards. Even though the State had already viewed the questionnaires when it requested a shuffle, the court of criminal appeals held that the State's request was timely.[11] Specifically, the court stated that "written questionnaires, while often helpful tools in conducting voir dire, do not constitute a formal part of the voir dire proceedings" and that "voir dire does not com-

2. TEX.CODE CRIM. PROC. ANN. art. 35.11 (Vernon Supp.2000); TEX.R. CIV. P. 223.

3. *See* TEX.CODE CRIM. PROC. ANN. art. 35.11; TEX.R. CIV. P. 223; *Jones v. State*, 833 S.W.2d 146, 149 (Tex.Crim.App.1992) (holding that article 35.11 guarantees only a single shuffle).

4. TEX.R. CIV. P. 223.

5. *See Ex parte Daigle*, 848 S.W.2d 691, 692 (Tex.Crim.App.1993).

6. *See Williams v. State*, 719 S.W.2d 573, 577 (Tex.Crim.App.1986).

7. *Id.*

8. *See, e.g., Davis v. State*, 782 S.W.2d 211, 214 (Tex.Crim.App.1989), *cert. denied*, 495 U.S. 940, 110 S.Ct. 2193, 109 L.Ed.2d 520 (1990); *Williams*, 719 S.W.2d at 577; *Richardson v. State*, 981 S.W.2d 453, 456 (Tex.App.—El Paso 1998, pet. ref'd); *Turner v. State*, 828 S.W.2d 173, 177 (Tex.App.—Houston [1 st Dist.] 1992, pet. ref'd), *cert. denied*, 507 U.S. 1037, 113 S.Ct. 1865, 123 L.Ed.2d 485 (1993).

9. *Williams*, 719 S.W.2d at 577.

10. *See Garza v. State*, 7 S.W.3d 164 (Tex. Crim.App.1999).

11. *Id.* at 166.

mence simply because a party has read the answers to written jury questionnaires." [12]

Additionally, it is important to note that rule 226 requires the trial court or its designee to swear the jury panel "[b]efore the parties or their attorneys begin the examination of the jurors." [13] Further, rule 226a requires the trial court to give the jury panel admonitory instructions as prescribed by the Texas Supreme Court. [14] The Approved Instructions accompanying rule 226a contain oral instructions that must be given by the trial court "to the jurors after they have been sworn as provided in Rule 226 and before the voir dire examination." [15] Thus, voir dire examination cannot begin until the jury panel has been sworn and instructed. The record in this case reflects that once the jury panel members were segregated in the central jury room, they were sworn. There is no evidence, however, that the trial court had instructed the jury panel members before the attorneys viewed the questionnaires and before the shuffle was requested, thus indicating that voir dire had not yet begun.

The conduct of voir dire rests largely within the sound discretion of the trial judge. [16] The questions posed on jury questionnaires traditionally are attributed to the trial court. The purpose of jury questionnaires is to elicit basic information, possible biases, and other problems that would otherwise be brought out during voir dire, the time when the attorneys actually speak with the prospective jurors. Counsel may rely on these questionnaires to determine which questions to ask during voir dire and which jurors to strike, thus minimizing the length of voir dire. While the trial judge is not required to allow the parties or their attorneys to view jury questionnaires before requesting a shuffle, I have found no authority prohibiting the trial judge from doing so.

The majority places great emphasis on the fact that the questionnaire in the case now before us was thirteen pages long and contained sixty-three questions. I have found no authority, however, holding that the start of voir dire is determined by the length of the questionnaire or the number of questions on the questionnaire. What if there had only been one page of questions? What if the parties had asked only twenty questions? What if the trial judge, rather than the parties, had drafted the questionnaires? What if the prospective jurors had answered the questionnaires, but the trial judge had withheld the completed questionnaires until after he had completed his required instructions? Would the trial judge then be required to add to the length and expense of the trial by dismissing the jury panel until the lawyers had been given time to copy and read the completed questionnaires?

The majority opinion holds that the questions in this case were too specific and too numerous and, thus, constituted the start of voir dire, but the majority fails to delineate any guidelines for what type of questionnaires, if any, could be used without cutting off a party's right to a shuffle. The majority's holding basically prohibits a trial judge from using any jury questionnaires because by doing so, the trial judge would cut off the parties' right to request a shuffle. Prohibiting a trial judge from using or allowing parties to use jury questionnaires is an unwarranted intrusion into the discretion of a trial judge to conduct a trial as efficiently as possible while still protecting the rights of all concerned.

The issue in this case is whether the trial judge abused his discretion by shuffling the jury after allowing the parties and their attorneys to view the questionnaires but before bringing the jury panel into the courtroom and before instructing the jury panel. A civil trial judge has no

12. *Id.*

13. TEX.R. CIV. P. 226.

14. *Id.* 226a.

15. *Id.* 226a Approved Instructions.

16. *See Williams,* 719 S.W.2d at 577.

less discretion in conducting voir dire than do his or her brethren on criminal benches. I would hold, as did the *Garza* court, that voir dire in civil cases, as in criminal cases, does not begin merely because the parties or their attorneys have viewed jury questionnaires, but begins after the trial court has seated the jury panel in order in the courtroom; has instructed, qualified, and sworn the jury panel; and has instructed the plaintiff to begin the voir dire examination. Thus, I would hold that the trial judge did not abuse his discretion in granting the request for a shuffle. For these reasons, I respectfully dissent to the majority's thorough and scholarly opinion.