Opinion issued August 18, 2011



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-09-00920-CV

———————————

Ramona Jackson, Appellant

V.

Williams
Brothers Construction Co., Inc. and
Ismael Alonso,
Appellees



 



 

On Appeal from the 280th District Court 

Harris County, Texas



Trial Court Case No. 2006-42645

 



 

O P I N I O N

          Appellant
Ramona Jackson sued appellees Ismael Alonso and Williams Brothers Construction
Company for injuries she sustained in an automobile accident.  On appeal, Jackson contends that the trial
court erred in denying her timely request for a jury shuffle under Rule 223 of
the Rules of Civil Procedure and in setting aside its order for new trial and
reinstating the judgment.  Jackson also
argues that the evidence was factually insufficient to support the jury’s
finding that she was negligent and 60% responsible.  We affirm.

Background

Ramona Jackson was a bus driver for
the Metropolitan Transit Authority of Harris County.  Her bus collided with a Williams Brothers
dump trunk driven by Ismael Alonso.  The
collision occurred near Metro’s Northwest Transit Center as Jackson and Alonso
were both preparing to turn left onto Post Oak Road.  The bus sustained damage to its right-front
fender and side-view mirror.  The dump
truck sustained only minor scratches to its left-rear tire.  Jackson’s neck, back, and right arm were
injured in the accident. 

At trial, Jackson testified that
she pulled out of the transit center traveling westbound on Old Katy
Highway.  She stopped at a red light in
the left-turn lane behind four other vehicles. 
When the light changed, Jackson took her foot off the brake pedal and
slowly moved forward.  Jackson testified
that in her peripheral vision she noticed Alonso attempting to enter her
lane.  She stated that Alonso was in the
adjacent lane when he “zoomed” by her and “all of a sudden made a turn over
into the [left-turn] lane.”  Jackson
“panicked,” grabbed the steering wheel, and hit the brakes.  She testified that she “was blowing [the]
horn trying to . . . let [Alonso] know that he was going to
hit [her],” but he did not respond to the honking and continued to come into
her lane.  Jackson stated that the
left-rear end of Alonso’s truck struck the right-front corner of the bus,
knocking the bus into oncoming traffic. 
On impact, her right arm fell though the center of the steering wheel,
jerking her body and causing her injuries. 
Jackson testified that the impact also moved the right side-view mirror
forward and damaged the right-front fender of the bus.

Alonso testified that he was
driving an 18-wheel dump truck on Old Katy Road.  He stated that he moved quickly into the
left-turn lane in order to make a left turn on Post Oak Road and stopped at the
red light.  Alonso did not feel the
impact of the collision with the bus, and he was not aware that the accident
had occurred until Jackson tapped on his window and told him that his truck had
hit her bus.  He claimed that he was
already stopped in the left lane, waiting to turn left when Jackson changed
lanes and ran into him.  Alonso testified
that he saw Jackson leave the transit center and that she was “coming in the
opposite direction of the traffic” when she drove into the left turn lane.  He also stated that “[he] was in the line to
make a left hand turn and [Jackson] wanted to beat [him] to the lane.”  Williams Brothers stipulated that Alonso was
acting in the course and scope of his employment when the accident occurred.

Officer N. Roberts of the Metro
Police Department investigated the accident. 
When he arrived at the scene, he assessed the damage to the vehicles and
took statements from Jackson and Alonso. 
He noted that the area was under construction and drew a diagram that
documented the lane configuration at the time of the accident.  There were two lanes for westbound traffic
and a left-turn lane.  There was also a
lane for buses coming out of the transit center, which directed them onto Old
Katy Road.  Roberts testified that there
was a wide unmarked area of pavement on which buses coming out of the transit
center could drive.  Based on his investigation,
he determined that Jackson turned out of the transit center onto Old Katy Road
into the unmarked area of pavement.  She
drove on the unmarked pavement until the road markings indicated that it was a
turn lane.  Roberts testified that
Jackson was lawfully traveling in this lane, but he also testified that he did
not know whether the unmarked area was a designated lane of travel.  He concluded that Alonso was driving
westbound and entered the turn lane in front of Jackson where the pavement
markings indicated that westbound traffic could move into the lane.  Because Jackson was already in the lane,
Roberts concluded that she had the right-of-way and that Alonso failed to yield
before entering the lane.  On
cross-examination, however, he agreed with defense counsel’s statement that
Alonso was following the road markings.

Eugene Moore, the corporate
representative for Williams Brothers and Alonso’s supervisor, testified that
the company sent its own accident investigator to the scene.  The employee, who did not ordinarily
investigate accidents, was instructed to draw a sketch of the vehicles, record
information about the vehicles and drivers, and take pictures of the vehicles
and any damage.  Moore reviewed the
photographs and notes taken by the accident investigator.  He reported that Jackson claimed the dump
truck hit her bus and that Alonso disputed Jackson’s version of the
events.  Moore agreed, however, that it
was physically impossible for Alonso’s version of the facts to be true because
the bus’s side-view mirror had been knocked forward by the impact.

Jackson sued for negligence,
alleging that Williams Brothers was vicariously liable for Alonso’s
negligence.  Alonso and Williams Brothers
argued that Jackson’s negligence was the sole cause of the accident.  The trial court’s charge submitted questions
to the jury on both Jackson’s and Alonso’s negligence, and it asked the jury to
assign a percentage of responsibility to each party it found negligent.  Both Jackson and Alonso were found negligent,
and the jury assigned 60% responsibility to Jackson and 40% to Alonso.

The trial court entered a
take-nothing judgment, and Jackson filed a motion for new trial.  The trial court granted her motion “in the
interest of justice and fairness” and set aside the judgment.  The case was called to trial for the second
time on July 20, 2009.  On that day,
Alonso and Williams Brothers moved that the trial court vacate the order
granting new trial and reinstate the judgment on the grounds that the Texas
Supreme Court’s July 3, 2009 holding in In
re Columbia Medical Center of Las Colinas, Subsidiary, L.P., 290 S.W.3d 204
(Tex. 2009), required the court to give a reasonably specific justification for
granting the motion for new trial.  Given
the passage of time, the trial court was unable to provide a reason for
granting the new trial, so it set aside the order and rendered judgment in
favor of Alonso and Williams Brothers. 
Jackson filed a second motion for new trial, which the trial court
denied.  

Jackson appeals, arguing that the
trial court erred in denying her timely request for a jury shuffle and in
setting aside the order granting a new trial. 
She further contends that there is insufficient evidence to support the
jury’s finding that she was negligent and its assignment of 60% of the
proportionate responsibility to her.

Analysis

I.                 
Jury shuffle

In her first issue, Jackson argues
that the trial court erred in denying her request for a jury shuffle.  The trial court announced that voir dire
would begin when the attorneys received the juror information sheets.  The court also indicated that it would deny a
shuffle if it were requested after the attorneys received and looked at the
cards.  The attorneys reviewed the juror
information cards for approximately 15 minutes. 
After reviewing the cards but before the jury entered the courtroom for
the first time, Jackson’s attorney requested that the panel be shuffled.  The trial court denied the request, and the
panel was seated for questioning. 
Jackson argues that her request was timely and that the court’s ruling
was erroneous.

Appellees do not assert that the
trial court was correct to deny the shuffle; accordingly, we assume without
deciding that the jury shuffle was erroneously denied.  Nevertheless, to obtain relief on appeal,
Jackson must demonstrate harm resulting from the error.  See Tex. R. App. P. 44.1(a).  We will not reverse a judgment on appeal on
the ground that the trial court made an error of law unless we conclude that
the error complained of probably caused the rendition of an improper judgment
or probably prevented the appellant from properly presenting the appeal.  Id.  Jackson’s theory of how she was harmed by
lack of a shuffle is that “there was a strong likelihood” that a shuffle would
have resulted in a jury that included another person who was more acceptable to
her, thus freeing her to use a peremptory strike on another juror she had
unsuccessfully attempted to strike for cause. 
She also contends that the lack of jury shuffle makes it “difficult to
determine the numerical sequence the shuffled jury would have had,” thereby
preventing her from properly presenting the issue on appeal.

Relying on Cortez v. HCCI-San Antonio, Inc., 159 S.W.3d 87 (Tex. 2005),
Jackson contends that we should presume harm and reverse the judgment.  She argues that if the court had granted her
request to shuffle the jury, “there was a strong likelihood that [a more
preferable juror] would have had a lower number on the venire panel and would
have been chosen as a member of the petit jury.”  Williams Brothers and Alonso contend that we
should apply a traditional harm analysis. 
They argue that we cannot reverse the judgment under Rule 44.1(a)
because Jackson has not demonstrated that the denial of the jury shuffle
affected the randomness of the jury.

In Rivas v. Liberty Mutual Insurance Co., 480 S.W.2d 610 (Tex. 1972),
a trial court clerk prepared the original general jury trial list from a random
ordering method that did not technically conform to Rule 223 because “the names
were not placed on the panel list in the order in which they were drawn from
the jury wheel.”  480 S.W.2d at 611.  Instead, “the general jury panel was listed
in the order in which the letters of summons were collected from the
prospective jurors at random by the bailiff.” 
Id.  The trial court refused a request to
shuffle.  See id.  In its analysis, the
Texas Supreme Court observed that “the listing and reshuffle provisions of Rule
223 are designed to insure a random selection of jurors.”  Id.
at 612.  Accordingly, the Court held that
the trial court’s refusal to shuffle did not raise an inference of probable
harm because it did not affect the randomness of the jury.  Id.

In light of Rule 223’s purpose of
ensuring a random selection of jurors as explained in Rivas, we do not agree that harm should be presumed under the
circumstances of this appeal.  Cortez held that when a party has
preserved error regarding the denial of a motion to strike a juror for cause,
harm may be presumed from the participation of that objectionable juror because
“[n]o one except the jurors themselves knows exactly what transpires in the
jury room; we know only the verdict.”  See Cortez, 159 S.W.3d at 91.  But Jackson does not complain about (and did
not preserve error about) the effects of participation by any particular juror
who should have been excluded.  If the
ordinary procedure for preserving error relating to a particular juror had been
followed, any such error could have been remedied by the trial court.  See id.

Instead, Jackson complains only
that she did not get a new random order from which to pick the jury.  The exclusion of particular jurors is not,
however, the purpose or even the necessary effect of a jury shuffle.  Rule 223 does not bestow upon a litigant
the right to have a particular person seated on the jury or to have a
particular person fall within the strike zone. 
See Wells v. Barrow, 153
S.W.3d 514, 516–17 (Tex. App.—Amarillo 2004, no pet.).  While litigants play a role in excluding
prospective jurors who are biased, prejudiced, or otherwise disqualified from
jury service, the statutes and rules designed to ensure that a party’s right to
a jury trial are preserved do not include the right to select specific jury
members.  See Tex. Gov’t Code Ann. § 62.105 (West 2005) (disqualification of jurors); Tex. R. Civ. P. 229; see also Wells, 153 S.W.3d at 516–17 (distinguishing right to jury
trial from right to have particular person serve on jury).

There is no inference of probable
harm in the mere denial of a jury shuffle when the original order was
random.  See Rivas, 480 S.W.2d at 611–12. 
Jackson does not complain that the original order of the venire panel
was not random, so we cannot presume harm based on any failure of the essential
purpose of Rule 223.  The Cortez rationale of presumed harm does
not apply to this case because there is no identifiable and objectionable juror
who was erroneously allowed to participate in jury deliberations under
circumstances such that the juror’s influence on the outcome is
unknowable.  We therefore cannot presume
harm arising from the denial of a jury shuffle solely on the basis of the
participation of a juror as to whom no valid legal challenge was preserved.

Under the traditional harm
analysis, Jackson is required to show that violation of Rule 223 “probably
caused the rendition of an improper judgment” or “probably prevented [her] from
properly presenting the case.”  See Tex.
R. App. P. 44.1(a).  The court in Carr v. Smith, 22 S.W.3d 128, 135 (Tex. App.—Fort Worth 2000, pet.
denied), adopted a “relaxed” harmless error standard of review to be applied
when the trial court erroneously grants a party’s request to shuffle after the
panel learns substantive, case-specific information about the panel’s
composition.  Reasoning that “‘[t]he necessity to prevent the subtle erosion
of the standard of the jury system’” does not require the appellant to show a
specific injury, the court held that reversal is warranted if the appellant
demonstrates that the error caused the trial to be “materially unfair.”  Carr,
22 S.W.3d at 135 (quoting Mendoza v.
Ranger Ins. Co., 753 S.W.2d 779, 781 (Tex. App.—Fort Worth 1988, writ
denied)).  While the relaxed harm
analysis does not require a specific showing of prejudice or harm, “it [does]
require[] some showing that the randomness of the jury has suffered.”  Id.
at 136.  

We conclude that Jackson has failed
to demonstrate harm under either the traditional harm analysis or the relaxed
harm analysis because she has not shown that lack of a shuffle affected the
randomness of the jury.  Instead,
Jackson’s only argument that she was harmed by the trial court’s refusal to
shuffle the jury is that: 

If there had been a jury
shuffle . . . there was a strong likelihood that [a more preferable juror]
would have had a lower number on the venire panel and would have been chosen as
a member of the petit jury, and that [Jackson] would have been able to use a
peremptory challenge against [two less preferable jurors who were seated on the
panel] or others.

 

Jackson does not argue that the panel was not random
at the outset, nor does she contend that the trial court’s error in refusing
the shuffle made the panel less random (if that is even theoretically possible).  The error therefore has not been shown to
have probably caused the rendition of an improper judgment.  See
Rivas, 480 S.W.2d at 612.  Jackson
does not argue that the error made the trial materially unfair, and the record
does not suggest that it did.  See Carr, 22 S.W.3d at 135–36.

Jackson also contends that the lack
of a shuffle prevented her from properly presenting the error on appeal.  See Tex. R. App. P. 44.1(a). 
She argues that the lack of a shuffle makes it difficult to determine
the order in which the prospective jurors would have been seated had a shuffle
occurred.  As discussed above, the
purpose of the jury shuffle rule is to ensure a random selection of
jurors.  Rivas, 480 S.W.2d at 612. 
Harm therefore would result from the wrongful denial of a jury shuffle
only if the original order were not random. 
But Jackson does not argue that the jury was not random at the outset,
and therefore she has demonstrated no harm. 
This analysis would not change even if Jackson could present evidence of
the presumably random juror order that would have resulted if a jury shuffle
had been permitted.  She therefore has
not been prevented from properly presenting the error on appeal.

A procedural error in selecting a
jury is not a fundamental constitutional error immune from harmless error
analysis.  See Rivas, 480 S.W.2d at 611–12; Wells, 153 S.W.3d at 518.  The
harmless error standard of review has a long history in Texas jurisprudence, see, e.g., Robert W. Calvert, The Development of the Doctrine of Harmless
Error in Texas, 31 Texas. L. Rev. 1
(1952), and serves important policy interests of judicial efficiency by
constraining appellate courts’ authority to order new trials to those
circumstances in which the substantial rights of the litigants have been
affected by the error.  See, e.g., Tex. R. Civ. P. 434, general commentary (1966) (discussing
origin and purpose of harmless error standard) (superseded by Tex. R. App. P. 44.1 (1997)); W.
Wendall Hall, Hall’s Standards of Review, 42 St. Mary’s L.J. 1, 245–46 (2010).  Accordingly,
assuming without deciding that an error occurred in this case, Jackson has not
presented grounds for a reversal under either the traditional or relaxed
standards of harm analysis.  We cannot
conclude that the error probably caused the rendition of an improper judgment or
probably prevented her from presenting the error on appeal.  Moreover, Jackson does not argue that the
error caused the trial to be materially unfair. 
Jackson’s first issue is overruled.

II.              
Motion for new trial

Jackson argues that the trial court
erred in setting aside its order granting a new trial and in reinstating the
judgment.  She contends that the Texas
Supreme Court’s In re Columbia Medical
Center opinion does not apply retroactively to her case because the order
granting a new trial was signed prior to the Supreme Court’s decision.  She also argues that the court abused its
discretion in setting aside the new trial order because the appellees’ motion
was untimely.  

Whether a decision of the Texas
Supreme Court applies retroactively or prospectively is within the discretion
of the Court.  Carrollton-Farmers Branch Indep. Sch. Dist. v. Edgewood Indep. Sch.
Dist., 826 S.W.2d 489, 518 (Tex. 1992). A decision applies retroactively
unless the Court exercises its discretion to modify that application.  Id.;
see also Bowen v. Aetna Cas. & Sur. Co., 837 S.W.2d 99, 100 (Tex. 1992)
(per curiam).  Jackson contends that Columbia does not apply retroactively
because it involves matters of procedure, but this argument is unsupported by
relevant case law or the language of Columbia
itself.  In support of her argument,
Jackson relies on In re Abell, 613
S.W.2d 255 (Tex. 1981), and Morrison v.
Williams, 665 S.W.2d 212 (Tex. App.—San Antonio 1984, no writ).  But neither of these cases is instructive or
controlling on the issue of the retroactive application of Texas Supreme Court
decisions because both address the retroactive application of legislation.  See
Abell, 613 S.W.2d at 260; Morrison,
665 S.W.2d at 214.  Moreover, the
language of Columbia demonstrates
that the Supreme Court did not intend for it to apply only prospectively.  The Court held that trial courts do not have
discretion to grant new trials without clearly identifying the reasons for
doing so with reasonable specificity.  Columbia, 290 S.W.3d at 212–13, 215.

“When a new trial is granted, the
case stands on the trial court’s docket ‘the same as though no trial had been
had.’”  In re Baylor Med. Ctr., 280 S.W.3d 227, 230–31 (Tex. 2008) (quoting
Wilkins v. Methodist Health Care Sys.,
160 S.W.3d 559, 563 (Tex. 2005)).  Thus,
a trial court has the power to set aside an order granting new trial and to
reinstate the prior judgment “any time before a final judgment is entered.”  Id.
at 231 (quoting Fruehauf Corp. v. Carrillo,
848 S.W.2d 83, 84 (Tex. 1993)). 
Accordingly, the trial court did not abuse its discretion in setting
aside the order granting a new trial.  We
hold that the trial court did not err, and we overrule Jackson’s second issue.

III.          
Factual sufficiency

In her third issue, Jackson
challenges the factual sufficiency of the evidence supporting the jury’s
findings of negligence and assignment of proportionate responsibility.  She argues that the jury’s negligence finding
and assignment of 60% of the
proportionate responsibility to her is against the great weight and
preponderance of the evidence. 

In reviewing a
challenge to the factual sufficiency of the evidence, we consider and weigh all
of the evidence and may set aside the verdict only if the finding is so against
the great weight and preponderance of the evidence that it is clearly wrong and
unjust.  Cain v. Bain, 709 S.W.2d
175, 176 (Tex. 1986); Benavente v.
Granger, 312 S.W.3d 745, 748 (Tex. App.—Houston [1st Dist.] 2009, no pet.).  We may not substitute our opinion for that of
the trier of fact merely because we might have reached a different fact conclusion.  Herbert v. Herbert, 754 S.W.2d
141, 144 (Tex. 1988); Klekar v. S. Pac.
Transp. Co., 874 S.W.2d 818, 827 (Tex. App.—Houston [1st Dist.] 1994, writ
denied).  The trier of fact is the sole
judge of the credibility of the witnesses and the weight to be given their
testimony.  Klekar, 874 S.W.2d at 827.  A
jury may believe or disbelieve the testimony of a witness, in whole or in part,
and it may resolve any inconsistencies in a witness’s testimony.  Eberle v. Adams, 73 S.W.3d
322, 327 (Tex. App.—Houston [1st Dist.] 2001, pet. denied).  

Although there was evidence that Alonso was
negligent in failing to yield to the bus, the evidence at trial also
established that he was following the pavement markings.  Jackson, Roberts, and Moore all testified
that Jackson turned into the center lane. 
Both Roberts and Moore testified that she was driving in the center lane
before the pavement markings indicated that vehicles could move into the turn
lane, and Roberts’s diagram showed that Jackson’s bus was stopped partially in
the area designated as a turn lane and partially in the wide-unmarked
area of pavement.  Although Roberts testified that Jackson
had the right-of-way, Alonso stated that she was trying to “beat” him and that
she was “going in the opposite direction.” 
There was also evidence that Jackson did not see the dump truck until
seconds before the accident, raising an inference that she failed to keep a
proper lookout when she moved from the unmarked area of pavement into the
left-turn lane.  See Oakley v. C.E. Duke’s Wrecker Servs., 557 S.W.2d 810, 813 (Tex.
App.—Houston [1st Dist.] 1977, writ ref’d n.r.e.) (holding that jury’s findings
were not against great weight and preponderance of evidence when plaintiff failed
to make defensive maneuvers when she saw defendant driving fast and perceived
that he was not going to yield the right-of-way).  Based on this evidence, the jury’s finding was
not against the great weight and preponderance of the evidence.  See Benavente,
312 S.W.3d at 748.

Jackson also challenges the jury’s assignment
of 60% of the responsibility for the accident to her.  However, the jury is given wide latitude in
determining the negligent parties’ proportionate responsibility.  Hagins
v. E-Z Mart Stores, Inc., 128 S.W.3d 383, 392 (Tex. App.—Texarkana 2004, no
pet.); Rosell v. Cent. W. Motor Stages,
Inc., 89 S.W.3d 643, 659–60 (Tex. App.—Dallas 2002, pet. denied.).  As with our review of the sufficiency of the
evidence to support the negligence finding, we may set aside the jury’s
determination of proportionate responsibility only if the finding is so against
the great weight and preponderance of the evidence that it is clearly wrong and
unjust.  See Cain, 709 S.W.2d at 176. 
Even if the evidence could support a different percentage allocation, we
may not substitute our judgment for that of the jury.  Rosell,
89 S.W.3d at 659–60; Samco Props., Inc.
v. Cheatham, 977 S.W.2d 469, 478 (Tex. App.—Houston [14th Dist.] 1998, pet.
denied).  Because the evidence supporting
the jury’s negligence finding is factually sufficient, we hold that the
evidence supporting the jury’s assignment of 60% responsibility to Jackson is
also sufficient.  See Rosell, 89 S.W.3d at 660. 
We overrule Jackson’s third issue.

Conclusion

          We affirm the judgment of the trial court.

 

 

 

 

                                                                   Michael
Massengale

                                                                   Justice 

 

Panel consists of Justices Keyes,
Sharp, and Massengale.

Justice Sharp, dissenting.